1   McPHARLIN, SPRINKLES & THOMAS, LLP
    ELAINE M. SEID Bar # 72588
2   PAUL S. AVILLA, Bar #120458
    10 Almaden Blvd., Suite 1460
3   San Jose, California 95113
    Telephone:  (408) 293-1900
4   Facsimile:  (408) 293-1999

5   Attorneys for Appellee
    SARAH CECCONI
6

7
                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9
                         SAN JOSE DIVISION
10

11  In re:                          )   No.      5:07-CV-03636-JW
                                    )
12  GIUSEPPE ENZO CECCONI,          )
                                    )
13       Debtor.                     )   **APPELLEE'S BRIEF**
                                    )
14  ──────────────────────────      )
                                    )
    SARAH CECCONI,                  )   **The Honorable James Ware**
15                                  )
         Plaintiff,                 )
16                                  )
    v.                             )
17                                  )
    GIUSEPPE ENZO CECCONI, A.C.     )
18  SPICER, TRUSTEE IN BANKRUPTCY   )
    (UNDER U.K. INSOLVENCY LAWS),   )
19                                  )
         Defendants.                )
20  ──────────────────────────      )
                                    )
21  A.C. SPICER, TRUSTEE IN         )
    BANKRUPTCY,                     )
22                                  )
         Appellant,                 )
23                                  )
    v.                             )
24                                  )
    SARAH CECCONI,                  )
25                                  )
         Appellee.                  )
26  ──────────────────────────      )

27

28

# TABLE OF CONTENTS

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

**ISSUES ON APPEAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

**I.    Issues Based on Purportedly Erroneous Factual Findings.** . . . . . . . . . . . . . . . . . . . . . **4**

    1.    Whether the Bankruptcy Court was clearly erroneous in finding
that Sarah did not intend for Enzo to have a beneficial interest in
the Pebble Beach Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    2.    Whether the Bankruptcy Court was clearly erroneous in finding
that Sarah Cecconi did not willfully deceive the court regarding
relevant documents in her possession or control; and . . . . . . . . . . . . . . . . . . . . . . 5

    3.    Whether the Bankruptcy Court was clearly erroneous in finding
that the alteration of documents by liquid white-out by Sarah
did not prevent either the Trustee or the Court from ascertaining
what those documents said . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**II.   Issues Based on Purportedly Erroneous Conclusions of Law.** . . . . . . . . . . . . . . . . . . **6**

    1.    Whether California law presumes that Sarah intended to make a
gift to Enzo, based on Sarah taking title to the property jointly with Enzo; . . . . . . 6

    2.    Whether the conveyance of the Pebble Beach Property to the
Cecconi Residential Trust terminated the purchase money
resulting trust in favor of Sarah; . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    3.    Whether conveyance of the property to Sarah's Living Trust,
or to the Cecconi Residential Trust ratified the property as
community property or "transmuted" the property from
separate property to community property; and . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    4.    Whether Sarah's refinancing the Property with a mortgage on
which she and Enzo were jointly liable extinguished any resulting trust. . . . . . . . 6

**III.  Issues Involving the Bankruptcy Court's Exercise of Discretion** . . . . . . . . . . . . . . . **6**

    1.    Whether the Bankruptcy Court abused its discretion in determining
that Sarah's conduct in discovery was not "utterly inconsistent with
the orderly administration of justice." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      The Bankruptcy Court's Factual Findings Are Reviewed Under the Clearly
        Erroneous Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.     The Bankruptcy Court's Legal Conclusions Are Reviewed De Novo . . . . . . . . . . . . 8

III.    The Bankruptcy Court's Denial of Terminating or Evidentiary
        Sanctions is Subject to Review Under the "Abuse of Discretion" Standard . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.      The Trial Court's Conclusion That The Pebble Beach Property is
        Sarah's Sole and Separate Property is Supported Under Two Legal Theories. . . . . . 9

        A.      Under California Law, Sarah's Clear and Convincing Proof of
                Her Sole Beneficial Ownership of the Property Overcomes the
                Presumption of Joint Ownership Based on Title and Alone
                Supports Judgment in Sarah's Favor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.      Under the Law of Purchase Money Resulting Trusts, Proof
                That Sarah Purchased the Property and Did Not Intend to Gift
                Enzo an Interest Therein is Sufficient to Establish Sarah's Sole
                Beneficial Ownership, Despite the Fact That Sarah and Enzo
                Jointly Held Title to the Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                1.      Sarah Established by Clear and Convincing Evidence
                        That She Purchased the Pebble Beach Property With
                        Her Separate Property Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                2.      The Bankruptcy Court's Finding That Enzo Contributed
                        Nothing to the Pebble Beach Property is Not Clearly Erroneous . . . . . . . 14

                3.      Trustee Has Failed to Establish Error in the Court's Finding
                        That Enzo Did Not Contribute to the Property . . . . . . . . . . . . . . . . . . . . 17

                        a.      Trustee Has Failed to Support the Argument That
                                Enzo's Testimony Was Contradictory. . . . . . . . . . . . . . . . . . . . . 17

                        b.      Trustee Has Failed to Explain How Bank Records
                                Indicate Error in the Bankruptcy Court's Findings . . . . . . . . . . . . 17

                        c.      Enzo Did Not, as Trustee Contends, Testify That
                                the $300,000 Was Indirectly Used to Pay For
                                Improvements to the Property . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

4.  The Bankruptcy Court Was Not Clearly Erroneous in
    Finding that Sarah Did Not Intend to Gift Enzo an
    Interest in the Pebble Beach Property . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    a.  Sarah Provided Direct Evidence of Her Intent
        Through Her Consistent and Unequivocal Testimony
        to the Effect That She Always Considered the Property
        to be Her Separate Property and Never Intended For
        Enzo to Have a Present Interest Therein. . . . . . . . . . . . . . . . . . . 21

    b.  Sarah and Enzo's Conduct With Respect to the Pebble
        Beach Property Was Consistent With Sarah's Sole
        Beneficial Ownership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    c.  The General Financial Relationship of the Cecconis
        Throughout Their 29-Year Marriage is Consistent
        With Sarah's Sole Ownership of the Property . . . . . . . . . . . . . . 24

    d.  The Manner in Which the Cecconis Treated the
        Ownership and Disposition of the California
        Townhouse Corroborates Sarah's Testimony
        Regarding Her Intent Not to Gift Enzo Any Interest
        in Her Real Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    e.  The Documentation of the First National Bank of Palm
        Beach Loans and Enzo's Reimbursement of Interest to
        Sarah Supports Sarah's Testimony Regarding Her Intent to
        Maintain Separate Finances and Separate Property . . . . . . . . . . 28

    f.  Holding Title in Community Property For Estate Planning
        Purposes is Not Inconsistent With Sarah's Intent to
        Maintain Sole Beneficial Ownership of the Property . . . . . . . . . 28

5.  Even the Bankruptcy court's Tangential Factual Findings
    Regarding Sarah's Intent Are Correct . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

    a.  The Bankruptcy Court Was Not Clearly Erroneous
        in Finding That Sarah and Enzo Did Not Own Any
        Property Together . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

    b.  The Bankruptcy court Was Not Clearly Erroneous
        in Finding That Contractors, Vendors and Others
        Assumed That the Cecconis Owned the Property Together . . . . . 30

6.   The Bankruptcy Court Did Not Make the Factual Finding That Sarah Intended For Enzo to Hold His Interest in Trust For Her . . . . . . . .  30

7.   The Bankruptcy Court Did Not Make the Factual Finding That Sarah Understood That Record Title Did Not Convey a Beneficial Interest  . . .  31

8.   The Bankruptcy Court Did Not Make the Factual Finding That Mr. Sanders Assumed Enzo Was an Owner of the Property Based Solely on Record Title . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

9.   The Factual Findings Challenged by Trustee, Even if Erroneous, Are Not Essential to the Judgment and Would Constitute Harmless Error . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

II.   **Trustee's Challenge to the Bankruptcy Court's Findings and Ruling in Connection With Trustee's Motion for Sanctions is Premature, Because no Order or Judgment Has Been Entered on the Motion for Sanctions** . . . . . . . . . .  **33**

III.   **The Bankruptcy Court Was Not Clearly Erroneous in its Factual Findings Regarding Trustee's Motion for Sanctions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **34**

A.   The Bankruptcy Court Was Not Clearly Erroneous in Finding That Sarah Did Not Willfully Deceive the Court Regarding Relevant Documents in Her Possession or Control . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

B.   The Bankruptcy Court Was Not Clearly Erroneous in Finding That the Alteration of Documents by Liquid White-out by Sarah Did Not Prevent Either the Trustee or the Court from Ascertaining What Those Documents Said . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

IV.   **The Bankruptcy Court Did Not Abuse its Discretion in Determining that Sarah Did Not Engage in Conduct Utterly Inconsistent with the Orderly Administration of Justice.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **37**

V.   **Trustee's Assertions of Legal Error Are Without Merit** . . . . . . . . . . . . . . . . . . . . . . .  **39**

A.   Under California Law, No Gift Presumption Arises on the Facts of This Case . .  39

B.   The Bankruptcy Court's Decision Not to Apply the "Gift Presumption" Cannot be Reversible Error, Because the Bankruptcy Court Found Evidence Sufficient to Rebut The Presumption in Any Event . . . . . . . . . . . . . . .  41

C.   Conveyance of the Pebble Beach Property to the Cecconi Residential Trust Did Not Terminate the Purchase Money Resulting Trust in Favor of Sarah . . . .  41

1.   The Fact That the Property Became Subject to an Express

1    Trust in the Cecconi Residential Trust Does Not Defeat Sarah's

2    Purchase Money Resulting Trust  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   41

3    2.    Transfer of the Property to the Cecconi Residential Trust

4    Merely Changed the Form of Title Under Which Enzo Held

     the Property For Sarah's Benefit and, Therefore, Did Not

5    Terminate the Purchase Money Resulting Trust . . . . . . . . . . . . . . . . . . . .   42

6    D.    Conveyance of the Property to Sarah's Living Trust, or to the

7    Cecconi Residential Trust Did Not Ratify the Property as

     Community Property or Transmute the Property From Separate

8    Property to Community Property  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   44

9
     1.    The Trust Transfers Could Not Ratify the Property as
10   Community Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   44

11
     2.    The Trust Transfers Did Not Transmute the Property
12   From Sarah's Separate Property to Community Property . . . . . . . . . . . .   46

13
     E.    Sarah's Refinancing of the Property with a Mortgage on Which
14   She and Enzo Were Jointly Liable Did Not Extinguish the Resulting Trust  . . . .   46

15
     **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **47**
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Statutes**

Cal. Civ. Code § 853  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Cal. Evid. Code § 662  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 9, 10, 45

Cal. Probate Code §§ 15002, 15003(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Fed. Rules App.Proc. 28(a)(3) & (e)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Fed. Rules Civ.Proc. 52(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

**Federal Cases**

Adler v Duval County Sch. Bd. 112 F.3d 1475 (11th Cir. 1997)  . . . . . . . . . . . . . . . . . . . . . . . .  6

Anderson v. Air West, Inc., 542 F.2d 1090, 1093 (9th Cir. 1976)  . . . . . . . . . . . . . . . . . . . .  7

Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985)  . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

Atel Fin. Corp. v Quaker Coal Co., 321 F.3d 924, 926 (9th Cir. 2003)  . . . . . . . . . . . . . . . . . . . .  11

Clady v. County of Los Angeles 770 F.2d 1421, 1431 (9th Cir. 1985)  . . . . . . . . . . . . . . . . . .  8

Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1337 (9th Cir. 1985)  . . . . . . . . . . . . .  7

*Goodman v United States* 398 F.2d 879 (9th Cir. 1968)  . . . . . . . . . . . . . . . . . . . . . . . . . .  33

Hilao v Estate of Marcos 103 F.3d 767, 778, fn. 4 (9th Cir. 1996)  . . . . . . . . . . . . . . . . . . . . . .  6

Hindmon v. National-Ben Franklin Life Ins. Corp., 677 F.2d 617, 621 (7th Cir. 1982)  . . . . . . . .  7

*In re Lawson* 122 F.3d 1237, 1240 (9th Cir. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

In re Mantle, 153 F.3d 1082, 1064 (9th Cir. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

In re Maurice, 21 F.3d 767, 774-75 (7th Cir. 1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

In re Rubin, 769 F.2d 611, 615 (9th Cir. 1985)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

In re U.S.A. Motel Corp., 450 F.2d 499, 503 (9th Cir. 1971)  . . . . . . . . . . . . . . . . . . . . . . . .  7

*Indiana State Employees Assoc. v Negley* 501 F.2d 1239, 1242 (7th Cir. 1974)  . . . . . . . . . .  8, 18

*Kesend v Dupont Towers, Inc.* 427 F.2d 316, 318 (5th Cir. 1970)  . . . . . . . . . . . . . . . . . . . . . .  7

McGoldrick Oil Co. v Campbell 793 F.2d 649, 653 (5th Cir. 1986)  . . . . . . . . . . . . . . . . . . . .  17

N/S Corp. v Liberty Mut. Ins. Co. 127 F.3d 1145, 1146-47 (9th Cir. 1997)  . . . . . . . . . . . . . . .  17

National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642,
49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Obrey v Johnson,* 400 F.3d 691, 699 (9th Cir. 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

*Perry v Baumann* 122 F.2d 409, 410 (9th Cir. 1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Smith v Porter* 143 F.2d 292 (8th Cir. 1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tahoe-Sierra Pres. Council, Inc. v Tahoe Reg'l Planning Agency,
322 F.3d 1064, 1076-77 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*UMC Elecs. Co. v United States* 249 F3d 1337 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 8

United Artists Corp. v. La Cage Aux Folles, Inc., 771 F.2d 1265, 1270 (9th Cir. 1985) . . . . . . . 9

*United States v Aluminum Co. of America* 148 F.2d 416, 65 (2nd Cir. 1945)
(superseded by statute on other grounds as stated in
*United States v LSL Biotechnologies,* 379 F.3d 672, (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 8

United *States v Comstock Extension Mining Co.* (9th Cir. 1954) 214 F.2d 400, 402-403 . . . . . . 8

United States v. National Medical Enters, Inc., 792 F.2d 906, 911 (9th Cir. 1986) . . . . . . . . . 7, 9

United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Yellow Cab Co.*, 338 U.S. 338, 341, 94 L. Ed. 150, 70 S. Ct. 177 (1949) . . . . 7, 8

*Weber v Alabama-California Gold Mines Co.* 121 F.2d 663, 665 (9th Cir. 1941) . . . . . . . . . . . . 8

*Wineberg v.* Park 321 F.2d 214, 217 (9th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**California Cases**

Altramano v. Swan 20 Cal.2d 622, 628 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41

*Bayles v Baxter,* 22 Cal. 575 (1863) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Gudelj v Gudelj* 41 Cal.2d 202 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45-47

*In re MacDonald,* 51 Cal.3d 262 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Johnson* v. *Johnson* 192 Cal.App. 3d 551, 556, fn. 1 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lloyds Bank California v. Wells Fargo Bank* 187 Cal.App.3d 1038, 1042 (1986) . . . . . . . . . . . 11

*Lowenthal v Kunz,* 104 Cal.App.2d 181 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

Majewsky v. Empire Constr. Co., Ltd. 2 Cal.3d 478, 485 (1970) [85 Cal.Rptr. 819] . . . . . . . . 11

*Martin v. Kehl* 145 Cal.App.3d 228, 238-9 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

McKinnon v. McKinnon 181 Cal.App.2d 97 at 104 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Novak v Novak,* 249 Cal.App.2d 438 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Owings v. Laugharn 53 Cal. App. 2d 789, 791 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Snook v Page, 29 Cal.App. 246, 250 (1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Socol v. King* 36 Cal.2d 342, 345 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 40

1

**Treatises**

2

Restatement of the Law, Second,  Trusts, § 442  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40, 41

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2    The trial in this adversary proceeding was to establish whether Enzo Cecconi ("Enzo") has

3    any interest in a 4.52 acre parcel of real property, including a residence thereon, located at 3190

4    Del Ciervo Drive, Pebble Beach, California (the "Property" or the "Pebble Beach Property").

5    Title to the Property (unimproved at that time) was acquired in 1985 under grant deeds conveying

6    the Property in two separate parcels to "Giuseppe E. Cecconi and Sarah Coleman Cecconi,

7    husband and wife as Community Property." It is stipulated that the raw land was purchased

8    entirely with plaintiff Sarah Cecconi's ("Sarah's") separate property funds.

9    At trial, Sarah sought a determination that the Property is her sole and separate property,

10    despite the fact that the initial grant deeds conveyed title to Sarah and Enzo as Community

11    Property. A.C. Spicer, Trustee in Bankruptcy (under U.K. Insolvency Laws), the Trustee in

12    Enzo's U.K. bankruptcy proceeding ("Trustee") sought a determination that Enzo holds a

13    community property interest in the Property. The outcome of the case ultimately turned on the

14    factual issue of Sarah's intent – specifically, whether Sarah intended to gift Enzo a beneficial

15    interest in the Property. The Bankruptcy Court found that Sarah met her burden of proof by clear

16    and convincing evidence:

17    *"The evidence shows clearly and convincingly that Sarah held the*
18    *full beneficial interest in the Property when the Property was*
     *acquired and did not intend to gift an interest to Enzo by placing his*
19    *name on record title."*

20    The Bankruptcy Court decided this factual issue on the basis of credible testimony from

21    Sarah, Enzo and corroborating witnesses to the effect that Sarah and Enzo both firmly believed at

22    all times that the Property was Sarah's and Sarah's alone. The development of the Property was

23    the fulfillment of Sarah's lifelong dream to own her own home in Pebble Beach. Sarah purchased

24    the Property without input from Enzo. Sarah alone hired an architect and the other professionals

25    who obtained necessary approvals and who designed and built her house. She funded the entire

26    effort with her separate property funds and for more than 20 years has paid all expenses associated

27    with the Property, including property taxes, insurance and maintenance. The evidence at trial

28    established that Enzo never contributed any money toward the Property. The conduct of the

1   Cecconis was thus shown to be consistent with their testimony that they considered the Property

2   to be Sarah's separate property at all times.

3         The Bankruptcy Court's decision was also based on extensive documentary evidence

4   establishing that Sarah and Enzo consistently maintained separate finances throughout their

5   somewhat unusual 30 year marriage.  The Cecconis have pursued very separate and independent

6   lifestyles.  During twenty-two years of their marriage (and the period during which the Property

7   was acquired and improved) the Cecconis lived apart and visited each other at certain times of the

8   year.  During this period, Enzo pursued his restaurant business in Europe and Sarah spent time

9   traveling with her mother.  With the exception of helping Enzo obtain loans on a number of

10  occasions, Sarah was not privy to Enzo's business dealings and his financial information and

11  Enzo was not involved in Sarah's financial affairs or the stock portfolio she inherited from her

12  grandmother.

13        The Bankruptcy Court explained in its Memorandum Decision After Trial (the "Decision")

14  that: *"It is due in large part to the unusual nature of their relationship that Sarah is able to*

15  *support her position so convincingly as the plaintiff in this lawsuit."*[1]  Among other things, the

16  Bankruptcy Court found that *"The couple had a mutual, clear and strong understanding that*

17  *Enzo's property from his business ventures were his and Sarah's inheritance was hers."*[2]

18        The judgment declaring the Property to be Sarah's sole and separate property is supported

19  under two different legal theories.  The first legal theory by which the judgment is supported is

20  derived from Cal. Evid. Code § 662.  Thereunder, clear and convincing proof that neither Sarah

21  nor Enzo intended for Enzo to have any beneficial interest in the Property is sufficient to

22  overcome the presumption of joint beneficial ownership based on the state of title.  Thus, the

23  judgment can be affirmed solely on the basis of clear and convincing proof that both parties who

24  held title to the Property intended that the Property be Sarah's sole and separate property.

25        The second legal basis by which the judgment is supported is the legal theory of purchase

26  money resulting trusts.  Under that theory, the law implies that Enzo held title solely in trust for

27  the benefit of Sarah and held no beneficial ownership himself, based upon a two-prong analysis

28

---

[1]  Clerk's Record ("C.R."), Docket No. 202, Memorandum Decision After Trial ("Decision"), at pp. 3-4.
[2]  C.R., Docket No. 202, Decision, at p. 3.

1  showing clear and convincing evidence (1) that Sarah purchased the Property with her separate

2  property funds, and (2) that she never intended to gift Enzo an interest in the Property.

3        In this appeal, Trustee challenges the ultimate factual finding regarding Sarah's intent to

4  maintain sole beneficial ownership of the Property and argues that no evidence exists to support

5  that finding.  Trustee also challenges several of the legal conclusions reached by the Bankruptcy

6  Court.  Trustee argues that the Bankruptcy Court erred in concluding that Sarah's purchase money

7  resulting trust was not terminated by her post-acquisition transfers of the Property for estate-

8  planning purposes and/or a later refinance of the Property.  Trustee is wrong on each of these

9  points.

10        Finally, Trustee challenges factual findings and the ruling made by the Bankruptcy Court

11  in connection with Trustee's Motion For Evidentiary Sanctions filed before trial.  Trustee claims

12  that the Bankruptcy Court committed clear error in finding that Sarah did not intentionally

13  mislead the court or conceal documents in discovery and abused its discretion in denying

14  evidentiary or terminating sanctions.  These findings are not properly before this Court on appeal,

15  however, because the Bankruptcy Court has not yet entered any order or judgment on Trustee's

16  motion for sanctions.  Any appeal of those findings, as reflected in the Bankruptcy Court's

17  Memorandum Decision After Trial, is premature.  In any event, to the extent those findings are

18  treated as being incorporated into the judgment entered by the Bankruptcy Court, Sarah addresses

19  those issues below and shows that the Bankruptcy Court was not clearly erroneous in making such

20  findings and did not abuse its discretion.

21  **STATEMENT OF THE CASE**

22        On January 7, 2002, Trustee filed an ancillary proceeding under 11 U.S.C. § 304 in the

23  U.S. Bankruptcy Court For the Northern District of California, seeking to collect upon Enzo's

24  alleged interest in the Pebble Beach Property.  On January 15, 2003, Sarah filed a Complaint to

25  Establish Purchase Money Resulting Trust against Enzo and Trustee.[3]  On February 21, 2003,

26

27

28

---

[3]  C.R., Docket No. 1, Complaint to Establish Purchase Money Resulting Trust.

1   Trustee filed his answer, counterclaim and cross-claim.[4]  Trustee thereafter amended his

2   counterclaim and cross-claim on March 27, 2003 and June 18, 2003.[5]

3           On March 16, 2005, Trustee filed a Motion For Evidentiary Sanctions (the "Motion for

4   Sanctions"), seeking dismissal of Sarah's claims or, in the alternative, the inference that additional

5   unknown, unproduced documents contain statements favorable to Trustee.  The initial hearing on

6   the Motion for Sanctions occurred the first day of trial.  The Bankruptcy Court decided to carry

7   the motion with the case.  The Motion for Sanctions was thereafter briefed in all of the post-trial

8   briefs filed by the parties and was argued along with the merits of the case at closing argument in

9   the trial.

10          Trial commenced in this adversary proceeding on March 21, 2005 and continued from time

11  to time on fifteen days between March 21, 2005 and May 31, 2005.  Closing arguments were held

12  September 22, 2006 and post-trial briefing ended on November 22, 2006.[6]

13          The Bankruptcy Court filed its Memorandum Decision After Trial on April 17, 2007,

14  finding that *"Enzo holds no beneficial interest in the Property.  The Property is Sarah's sole and*

15  *separate property.  Accordingly, Trustee has no interest in the Property."*[7]

16          On June 6, 2007, the Bankruptcy Court entered judgment in favor of Sarah.[8]  This appeal

17  followed.

## ISSUES ON APPEAL

18

19  **I.      Issues Based on Purportedly Erroneous Factual Findings.**

20          **1.      Whether the Bankruptcy Court was clearly erroneous in finding that Sarah**

21          **did not intend for Enzo to have a beneficial interest in the Pebble Beach**

22          **Property.**

23          The "Issues Presented" portion of Trustee's Appellate Brief fails to identify exactly what

24  factual findings of the Bankruptcy Court Trustee is challenging.  Trustee vaguely describes the

25  first issue on appeal as *"Whether the Bankruptcy Court's findings and conclusions that Sarah*

26  ────────────────────────────
    [4]  C.R., Docket No. 6, Answer to Complaint, Counterclaim and Crossclaim by Defendant A.C.

27  Spicer.
    [5]  C.R., Docket No. 31, Second Amended Counterclaim by A.C. Spicer against Sarah Cecconi

28  and Crossclaim by A.C. Spicer against Giuseppe Enzo Cecconi.
    [6]  Docket No. 197, Trial Transcript ("TT").
    [7]  C.R., Docket No. 202, Decision, at p. 84.
    [8]  C.R., Docket No. 209, Judgment.

1  *Cecconi established the existence of a resulting trust and that the gift presumption does not apply*

2  *in this case are clearly erroneous."* The phrase *"findings and conclusions that Sarah Cecconi*

3  *established the existence of a resulting trust,"* encompasses much of the Bankruptcy Court's

4  decision in the case and is, therefore, virtually meaningless.  The second part of Trustee's first

5  issue (*"that the gift presumption does not apply in this case"*) at least identifies a particular legal

6  conclusion reached by the Bankruptcy Court.

7     It is apparent from Trustee's overall Appellant's Brief that he is challenging the central

8  factual finding of the Bankruptcy Court that Sarah did not intend for Enzo to have any beneficial

9  interest in the Pebble Beach Property.[9]  Although Trustee's approach seems to be to dispute some

10  of the tangential facts found by the Bankruptcy Court in arriving at its central factual finding,[10]

11  Trustee's arguments are most appropriately considered as part of an overall argument that the

12  Bankruptcy Court's was clearly erroneous in making its ultimate factual finding regarding Sarah's

13  intent.

14     The only other factual findings challenged by Trustee were made by the Bankruptcy Court

15  in connection with Trustee's Motion for Sanctions.  However, the Bankruptcy Court has not yet

16  entered any order or judgment on Trustee's Motion for Sanctions.  In the judgment from which

17  Trustee now appeals, the Bankruptcy Court specifically reserved jurisdiction to *"determine the*

18  *appropriate relief, if any, to be awarded to defendant A.C. SPICER on the basis of defendant A.C.*

19  *SPICER'S Motion For Evidentiary Sanctions."*[11]  Any challenge to the Bankruptcy Court's

20  factual findings or legal conclusions related to the Motion For Sanctions are, therefore, premature.

21  Nonetheless, in the event the District Court elects to consider the judgment itself as necessarily

22  including a denial of Trustee's request for terminating or adverse inference sanctions, Sarah will

23  address Trustee's challenge to the following two factual findings of the Bankruptcy Court:

24     **2.    Whether the Bankruptcy Court was clearly erroneous in finding that Sarah**
**Cecconi did not willfully deceive the court regarding relevant documents in**
25     **her possession or control;[12] and**

26

27

28
_____
[9]  See, e.g. the heading for section I.C. of Trustee's Appellant's Brief ("Appellant's Brief").
[10]  Appellant's Brief, Argument, subsections I.C-G.
[11]  C.R., Docket No. 209, Judgment.
[12]  Appellant's Brief, at subsection V.A, p. 43, lines 20-23.

3.    Whether the Bankruptcy Court was clearly erroneous in finding that the alteration of documents by liquid white-out by Sarah did not prevent either the Trustee or the Court from ascertaining what those documents said.[13]

II.    **Issues Based on Purportedly Erroneous Conclusions of Law.**

Trustee's appeal raises the following issues regarding conclusions of law made by the Bankruptcy Court:

1.    Whether California law presumes that Sarah intended to make a gift to Enzo, based on Sarah taking title to the property jointly with Enzo;

2.    Whether the conveyance of the Pebble Beach Property to the Cecconi Residential Trust terminated the purchase money resulting trust in favor of Sarah;

3.    Whether conveyance of the property to Sarah's Living Trust, or to the Cecconi Residential Trust ratified the property as community property or "transmuted" the property from separate property to community property; and

4.    Whether Sarah's refinancing the Property with a mortgage on which she and Enzo were jointly liable extinguished any resulting trust.[14]

III.    **Issues Involving the Bankruptcy Court's Exercise of Discretion.**

Trustee's challenge to the Bankruptcy Court's ruling on his Motion for Sanctions raises the following issue involving the Bankruptcy Court's exercise of discretion:

1.    Whether the Bankruptcy Court abused its discretion in determining that Sarah's conduct in discovery was not "utterly inconsistent with the orderly administration of justice."

---

[13]  Appellant's Brief, at subsection V.A, p. 43, lines 23-25.

[14]  Trustee also asserts – in footnote no. 6 of his Appellant's Brief – that the Bankruptcy Court abused its discretion in admitting two promissory notes into evidence (Exhibits 14 and 17). This is insufficient to raise that issue on appeal. Hilao v Estate of Marcos 103 F.3d 767, 778, fn. 4 (9th Cir. 1996); Adler v Duval County Sch. Bd. 112 F.3d 1475 (11th Cir. 1997) (argument or claim mentioned only in passing or in a footnote not sufficient to avoid waiver of the issue).

# STANDARD OF REVIEW

## I.  The Bankruptcy Court's Factual Findings Are Reviewed Under the Clearly Erroneous Standard.

The clearly erroneous standard of Rule 52(a) of the Federal Rules of Civil Procedure is applicable to Bankruptcy Court's factual findings in this case,[15] including the factual findings made by the court in connection with Trustee's Motion for Sanctions.[16]  Under this standard, the findings of the Bankruptcy Court must be upheld, unless the District Court, on review of the entire evidence, arrives at the definite and firm conviction that the finding is mistaken.[17]  When the evidence will support a conclusion either way, a trial judge's choice between two permissible views of the weight of the evidence cannot be clear error.[18]  Courts also say that the reviewing court may not reject findings just because it might have come to a different result on the same evidence or given the facts another construction when the trial court's interpretation is not clearly erroneous.  In 1985, the Supreme Court, in *Anderson v. Bessemer City*,[19] emphasized:

> "The reviewing court oversteps the bounds of its duty under Rule 52 if it undertakes to duplicate the role of the lower court... . If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."

Trustee's burden of demonstrating that the Bankruptcy Court's factual findings are clearly erroneous is a heavy one.[20]  This burden is especially strong in a case such as this where findings are primarily based upon oral testimony and the trial judge has viewed both the demeanor and the

---

[15]  *Perry v Baumann* 122 F.2d 409, 410 (9th Cir. 1941).
[16]  United States v. National Medical Enters, Inc., 792 F.2d 906, 911 (9th Cir. 1986); Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1337 (9th Cir. 1985); Anderson v. Air West, Inc., 542 F.2d 1090, 1093 (9th Cir. 1976); Hindmon v. National-Ben Franklin Life Ins. Corp., 677 F.2d 617, 621 (7th Cir. 1982).
[17]  United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985); In re U.S.A. Motel Corp., 450 F.2d 499, 503 (9th Cir. 1971).
[18]  United States v. Yellow Cab Co., 338 U.S. 338, 342 (1949).
[19]  470 U.S. 564, 573-74 (1985).
[20]  *Kesend v Dupont Towers, Inc.* 427 F.2d 316, 318 (5th Cir. 1970).

credibility of the witnesses.[21]  When a trial judge's finding is based on his decision to credit the

testimony of a witness who has told a coherent and facially plausible story that is not contradicted

by extrinsic evidence, that finding can virtually never be clear error.[22]  Extra deference may be

accorded to findings that are based on the credibility of witnesses.[23]

    In reviewing the trial court's findings of fact, the appellate court is required to take that

view of the evidence which is most favorable to the appellees.[24]  All controverted questions of fact

must be taken in their most favorable possible light for the parties who prevailed at the trial.[25]

    Since the Bankruptcy Court's findings here are based largely on Sarah and Enzo's

testimony and a credibility determination made by the trial court, the findings must be treated as

unassailable.[26]  As the U.S. Supreme Court has stated: *"findings as to the design, motive and*

*intent with which men act depend peculiarly upon the credit given to witnesses by those who see*

*and hear them."*[27]   Thus, if there was no conflict in the evidence and the question is whether the

testimony of a witness should be believed, the finding of the trial court is conclusive.[28]

**II.    The Bankruptcy Court's Legal Conclusions Are Reviewed De Novo.**

    The questions of law raised in this appeal are reviewed de novo.[29]

**III.    The Bankruptcy Court's Denial of Terminating or Evidentiary Sanctions is Subject
     to Review Under the "Abuse of Discretion" Standard.**

    The Bankruptcy Court's determination, in connection with Trustee's Motion for Sanctions,

that Sarah had not engaged in conduct utterly inconsistent with the orderly administration of

---

[21]   *Indiana State Employees Assoc. v Negley* 501 F.2d 1239, 1242 (7th Cir. 1974).  *UMC Elecs. Co. v United States* 249 F.3d 1337 (Fed. Cir. 2001).
[22]   Bessemer, supra 470 U.S. at 564, 573; Clady v. County of Los Angeles 770 F.2d 1421, 1431 (9th Cir. 1985).
[23]   Fed. Rules Civ.Proc. 52(a); Bessemer, supra 470 U.S. at 574-575.
[24]   *Smith v Porter* 143 F.2d 292 (8th Cir. 1944).
[25]   *Wineberg v.* Park 321 F.2d 214, 217 (9th Cir. 1963); United *States v Comstock Extension Mining Co.* 214 F.2d 400, 402-403 (9th Cir. 1954).
[26]   *United States v Aluminum Co. of America* 148 F.2d 416, 65 (2nd Cir. 1945) (superseded by statute on other grounds as stated in *United States v LSL Biotechnologies,* 379 F.3d 672, (9th Cir. 2004).
[27]   *United States v. Yellow Cab Co.*, 338 U.S. 338, 341, 94 L. Ed. 150, 70 S. Ct. 177 (1949).
[28]   *Weber v Alabama-California Gold Mines Co.* 121 F.2d 663, 665 (9th Cir. 1941).
[29]   *In re Lawson* 122 F.3d 1237, 1240 (9th Cir. 1997).

justice is reviewed under the abuse of discretion standard.[30]  This Court should not reverse absent a definite and firm conviction that the Bankruptcy Court made a clear error of judgment.[31]  The question is not whether this court would have, as an original matter, decided the issue differently, but whether the trial court exceeded the limits of its discretion.[32]

## ARGUMENT

**I.    The Trial Court's Conclusion That The Pebble Beach Property is Sarah's Sole and Separate Property is Supported Under Two Legal Theories.**

The Bankruptcy Court judgment declares the Pebble Beach Property to be Sarah's sole and separate property and that Enzo has no interest therein.  The judgment can be supported on either of two grounds.[33]  The first ground is that the Court's factual finding, by clear and convincing evidence, that *"neither Enzo nor Sarah intended for Enzo to hold any beneficial interest in the Property,"*[34] is sufficient to rebut the presumption of joint beneficial ownership that arises under Cal. Evid. Code § 662 from joint *record* ownership (title).  Thus, even without reference to purchase money resulting trust theory, this factual finding alone supports the judgment declaring the Property to be Sarah's sole and separate property.  Furthermore, the transfers of the Property for estate planning purposes and the refinancing of the Property (that Trustee claims defeat a resulting trust) do not alter this result.

The second ground on which the judgment below may be upheld is that the factual findings of the Bankruptcy Court support a purchase money resulting trust in favor of Sarah.  The court determined that Sarah purchased the property with her separate property funds and that she never intended for Enzo to have any beneficial interest in the property.  On those facts alone, the court may impose a purchase money resulting trust.  The question then becomes whether that resulting trust was extinguished or terminated by Sarah's acts of transferring the property for estate planning purposes, or refinancing the property.  Those legal issues are addressed below.

---

[30]   United States v. National Medical Enters, Inc., 792 F.2d 906, 910 (9th Cir. 1986); United Artists Corp. v. La Cage Aux Folles, Inc., 771 F.2d 1265, 1270 (9th Cir. 1985).

[31]   Id.

[32]   National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976) (per curiam); In re Rubin, 769 F.2d 611, 615 (9th Cir. 1985).

[33]   Whether property is property of the estate is determined under state law.  In re Mantle, 153 F.3d 1082, 1064 (9th Cir. 1998).

[34]   C.R., Docket No. 202, Decision, at p. 62.

1

2

3

A.    **Under California Law, Sarah's Clear and Convincing Proof of Her Sole Beneficial Ownership of the Property Overcomes the Presumption of Joint Ownership Based on Title and Alone Supports Judgment in Sarah's Favor.**

4

5

6

7

8

9

10

11

12

Outside a marital dissolution proceeding, the determination of beneficial ownership of real property begins with the presumption of Cal. Evid. Code § 662 that beneficial ownership corresponds to title.  It is equally clear, however, that separate property of one spouse can be held in community property (and vice versa) by oral agreement between the spouses, so long as such understanding is proven by clear and convincing evidence, so as to overcome the presumption of record ownership in Cal. Evid Code § 662.  This is because, the form of the instrument under which a husband and wife hold title is not conclusive as to the status of the property.  Property acquired in joint form may be shown to be actually the separate property of one spouse (or vice versa) according to the intention, understanding or agreement of the parties.[35]

13

14

15

16

Here, the Bankruptcy Court found by clear and convincing evidence that Sarah purchased the Pebble Beach Property with her separate property funds;[36] she developed and maintained the Property with her separate property funds;[37] and she and Enzo always intended that the Property be Sarah's sole and separate property.[38]

17

18

19

20

21

Although the Bankruptcy Court analyzed Sarah's claim to the Property under the theory of a purchase money resulting trust, Sarah also argued in the trial court that the Property could be determined to be her separate property on the basis of clear and convincing evidence that Sarah held the sole beneficial interest in the Property.[39]  The District Court may affirm the Bankruptcy Court's decision on any ground that has support in the record, whether or not the Bankruptcy

22

23

24

25

26

27

28

---

[35]  *Socol v. King* 36 Cal.2d 342, 345 (1950).

[36]  Trustee stipulated to this fact.  See, C.R., Docket No. 193, Stipulation Regarding Purchase of Unimproved Pebble Beach Property in 1985.

[37]  C.R., Docket No. 202, Decision, at p. 51 ("The Court finds by clear and convincing evidence that the initial purchase price and all costs of improvement were financed solely by Sarah.").

[38]  C.R., Docket No. 202, Decision, at p. 60-61 ("Sarah has demonstrated by clear and convincing evidence that she had no intention to [gift one-half of the Property to Enzo]."); p. 62 ("The Court finds [t]hat Sarah has shown the existence of a purchase money resulting trust by clear and convincing evidence.  First, both Enzo and Sarah credibly testified that neither Enzo nor Sarah intended for Enzo to hold any beneficial interest in the Property.").

[39]  C.R. Docket No. 198, Joint Post-Trial Final Supplemental Brief of Sarah Cecconi and Giuseppe Enzo Cecconi, at p. 2, lines 4-12; p. 5.

Court relied upon the same ground or reasoning adopted by the District Court.[40] Thus, the findings of the Bankruptcy Court are sufficient to rebut the presumption of joint ownership arising from the state of title and support the Bankruptcy Court's judgment in favor of Sarah, even without reference to the law of resulting trusts.  The judgment should stand on this basis alone.

>   **B.    Under the Law of Purchase Money Resulting Trusts, Proof That Sarah Purchased the Property and Did Not Intend to Gift Enzo an Interest Therein is Sufficient to Establish Sarah's Sole Beneficial Ownership, Despite the Fact That Sarah and Enzo Jointly Held Title to the Property.**

The law of purchase money resulting trusts ("PMRTs") is reflected in the Restatement on the Law, Trusts and is recognized under California law.[41]  Under PMRT law, where one party's funds are used to acquire real property and title is taken in the name of, or jointly with, another person, a rebuttable presumption arises that the property is owned solely by the person whose funds are used to purchase the property.  The presumption reflects the legal likelihood that in such cases the parties intended that the ostensible purchaser or joint-purchaser should acquire and hold title to the property for the one who paid for it.[42]

The first step in PMRT analysis is thus for the person asserting the PMRT to establish by clear and convincing evidence that they provided the funds used to purchase the property.

>   **1.    Sarah Established by Clear and Convincing Evidence That She Purchased the Pebble Beach Property With Her Separate Property Funds.**

Trustee stipulated that the unimproved Pebble Beach Property was purchased using Sarah's separate property funds.[43]  Trustee argued in the trial court, however, that Enzo had contributed funds toward the cost of constructing Sarah's residence on the Property.  The Bankruptcy Court

---

[40]  Atel Fin. Corp. v Quaker Coal Co., 321 F.3d 924, 926 (9th Cir. 2003); Tahoe-Sierra Pres. Council, Inc. v Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1076-77 (9th Cir. 2003).

[41]  *Lloyds Bank California v. Wells Fargo Bank* 187 Cal.App.3d 1038, 1042 (1986);  *Martin v. Kehl* 145 Cal.App.3d 228, 238-9 (1983).  Cal. Civ. Code § 853, upon which these and other cases rely, was repealed in 1986.  Nevertheless, cases decided under that statute express the common law of California relating to trusts and are still authoritative.  Cal. Probate Code §§ 15002, 15003(b); *Johnson* v. *Johnson* 192 Cal.App. 3d 551, 556, fn. 1 (1987).

[42]  Id. at 238-9; See also, Majewsky v. Empire Constr. Co., Ltd. 2 Cal.3d 478, 485 (1970) [85 Cal.Rptr. 819].

[43]  C.R., Docket No. 193, Stipulation Regarding Purchase of Unimproved Pebble Beach Property in 1985.

1   rejected that argument and found *"by clear and convincing evidence that the initial purchase*

2   *price and all costs of improvement were financed solely by Sarah"*[44] and that none of Enzo's

3   money was used to improve the Property.[45]  That finding is not clearly erroneous.

4        At trial, Sarah and Enzo testified unequivocally that Sarah and Sarah alone paid every

5   expense associated with the acquisition, development, and maintenance of the Pebble Beach

6   Property and that Enzo has made no financial contribution whatsoever to the Property.[46]

7        One of the witnesses at trial, Carla Korb, was the business and personal secretary to

8   Sarah's father (George Coleman) from August 1976 until Mr. Coleman's death in July 1997.  Ms.

9   Korb also maintained Sarah's financial records and acted as Sarah's personal secretary from 1980

10  through February of 1998.[47]  Ms. Korb testified with respect to the financial records that she

11  prepared and maintained for Sarah, all of which established that Sarah financed all aspects of the

12  Pebble Beach Property with her separate property.

13       Ms. Korb assisted Mr. Coleman in taking care of all of Sarah's financial affairs while she

14  worked for Mr. Coleman and, after his death, as Sarah's secretary.[48]  Ms. Korb kept meticulous

15  records, paid all of Sarah's bills,[49] arranged all of Sarah's loans[50] and routinely generated very

16  detailed monthly reports[51] of Sarah's income and expenses,[52] which reports later included a

17

18      [44]  C.R., Docket No. 202, Decision, at p. 51.

19      [45]  C.R., Docket No. 202, Decision, at p. 56-57.

20      [46]  Docket No. 159, TT 185:25 - 186:9; 192:8-13; 200:7-9; 264:3-5 (Enzo testimony); Docket No. 167, TT 1630:21 - 1631:7; 1632:19-24; 1647:7-15; 1648:20-22; 1649:1-8 (Sarah testimony).

21      [47]  Docket No. 160, TT 387:11-12; 415:10-15 [Ms. Korb worked for Mr. Coleman for 20
22  years]; 387:15-16 [Ms. Korb handled everything, the books, income, checks]; 390:8-391:9 [Mr. Coleman & Ms. Korb managed Sarah's financial life commencing in 1979]; 391:14-22 [Ms.
23  Korb paid most of her bills, kept records of monthly statements showing her portfolio, cost basis, what the market value was, reconciled her bank account and made sure she had funds in the bank for her bills]; 391:22-392:23 [only Mr. Coleman's office managed Sarah's finances from 1980
24  through February 1998, 392:24-25 [Ms. Korb supervised Sarah's checkbook]; 393:1-3 [Ms. Korb took care of paying the majority of Sarah's bills]; 394:1-3 [Ms. Korb reconciled Sarah's bank
25  statements every month]; 477:8-11; 495:19-21 [Ms. Korb maintained Sarah's business records from 1980 - 1998] (Ms. Korb testimony).
26

27      [48]  Docket No. 160, TT 390:8-391:9 (Ms. Korb testimony).

    [49]  Docket No. 160, TT 391:14–21, 393:4-393:17 (Ms. Korb testimony).

28      [50]  Docket No. 160, TT 413:17-414:4 (Ms. Korb testimony).

    [51]  Docket No. 220, Exhibits 54 through 60; Docket No. 221, Exhibit 61 through 70; Docket No. 222, Exhibit 71.

    [52]  Docket No. 160,TT 393:18-395:9;  400:16-18 (Ms. Korb testimony).

1  summary of Sarah's stock portfolio,[53] that were used by Mr. Coleman and Sarah's professionals as

2  a management tool regarding Sarah's finances.[54]  Mr. Coleman and Ms. Korb had no involvement

3  with Enzo's finances.[55]

4       The primary source of Sarah's finances was the portfolio she inherited from her

5  grandmother in 1979.[56]  The dividend and royalties from her portfolio were Sarah's primary

6  source of income.[57]  When Sarah purchased a townhouse in 1984, when she purchased the Pebble

7  Beach Property in 1985, and when she later constructed a house on the Property, she did so with a

8  series of loans secured by stock from her portfolio.[58]  The notes were all signed by Sarah,[59] and

9  not Enzo.[60]  The loan proceeds went into Sarah's bank account from which Ms. Korb paid for the

10  purchase of the townhouse and the Property and, later, the construction of Sarah's home.[61]

11  Sarah's monthly reports reflect in detail the loan proceeds as income and also reflect as

12  expenditures the property acquisitions and house construction.[62]  Sarah paid the mortgage for the

13  house,[63] the construction expenses,[64] the property taxes,[65] and the property insurance.[66]  Sarah

14  eventually repaid all the loans by selling more of her stock.[67]  When the Pebble Beach House was

15

16

17

[53]  Docket No. 160, TT 400:19-401:2 (Ms. Korb testimony).
18  [54]  Docket No. 160, TT 401:19-20 (Ms. Korb testimony).
[55]  Docket No. 160, TT 404:1-2 (Ms. Korb testimony).
19  [56]  Docket No. 160, TT 389:17-390:7 (Ms. Korb testimony).
20  [57]  Docket No. 160, TT 395:18-22 (Ms. Korb testimony).
[58]  Docket No. 160, TT 504:1-4; 506:10-13; 512:7-12; 528:9-10; 529:2-3; 529:22-23; 531:22-
21  25; 534:4-6; 534:20-23; 536:20-22; 538:4-7; 540:20-23; Docket No. 162, TT 678:15-18; 679:10-
13; 680:5-8; 681:20-23; 683:8-11; 685:16-17; 685:16-19 (Ms. Korb testimony).
22  [59]  Docket No. 160, TT 502:13-16; 505:4-9; 506:15-18; 512:13-14; 527:16-17; 528:21-22;
23  529:16-17; 531:20-21; 533:24-25; 534:16-17; 537:25-538:1; 540:16-17; Docket No. 162, TT
678:19-20; 679:14-15; 680:9-10; 681:24-25; 683:12-13; 685:20-21 (Ms. Korb testimony).
24  [60]  Docket No. 160, TT 505:10-11; 506:19-20; 527:21-22; 528:23-24; 529:18-19; 534:1-2;
534:18-19; 538:2-3; 540:18-19; Docket No. 162, TT 678:21-22; 679:16-17; 680:11-12; 682:1-2;
25  683:14-15; 685:22-23; 688:9-15 (Ms. Korb testimony).

26  [61]  Docket No. 162, TT 709:2-25 (Ms. Korb testimony).
[62]  Docket No. 162, TT 753:14-792:12 (Ms. Korb testimony).
27  [63]  Docket No. 220, Exhibit 53; Docket No. 162, TT 707:6-15, 708:1-13 (Ms. Korb
testimony).
28  [64]  Docket No. 222, Exhibit 79; Docket No. 162, TT 688:19-21 (Ms. Korb testimony).
[65]  Docket No. 223, Exhibit 87; Docket No. 162, TT 792:22-793:9  (Ms. Korb testimony).
[66]  Docket No. 223, Exhibit 88; Docket No. 162, TT 793:23-794:25  (Ms. Korb testimony).
[67]  Docket No. 162, TT 687:15-20 (Ms. Korb testimony).

1  completed, Sarah paid all household expenses for the residence.[68]  There is no credible dispute

2  that the Pebble Beach Property was purchased, developed, and has been maintained exclusively

3  with Sarah's separate property funds.

### 2. The Bankruptcy Court's Finding That Enzo Contributed Nothing to the Pebble Beach Property is Not Clearly Erroneous.

6  At trial, Trustee sought to establish that $300,000 transferred by Enzo to Sarah's bank

7  account in three separate payments in 1988 and 1999 was used to improve the Property.  The

8  Bankruptcy Court found, on the basis of documentary evidence and the testimony of Sarah, Enzo

9  and Ms. Korb, that the $300,000 wired by Enzo to Sarah's account was used to repay loans that

10  Enzo and Sarah jointly obtained from the First National Bank of Florida and which are reflected

11  in promissory notes that Sarah and Enzo jointly signed, dated January 26, 1981 in the amount of

12  $200,000 (the "$200,000 Note")[69] and January 1, 1982 in the amount of $100,000 (the "$100,000

13  Note") (collectively, the "Notes").[70]  The Notes were secured by some of Sarah's stock portfolio,

14  but the borrowed funds were used by Enzo and he paid the interest that accrued on the Notes and

15  repaid the principal.

16  The proceeds of the loan represented by the $200,000 Note were used to pay off a previous

17  loan that Enzo had received from Bessemer Trust when he started his restaurant business in

18  London.[71]  The proceeds of the loan represented by the $100,000 Note were used to pay off an

19  investor in Enzo's Paris restaurant, Mr. Gruet.[72]

20  The Bankruptcy Court found that Enzo and Sarah both understood that Enzo would be

21  solely responsible for paying the interest and paying off the principal on the two Notes.[73]  And

22  that is what occurred.  After making interest payments on the Notes, Enzo paid off the principal

23  balances by borrowing $300,000 from the Royal Bank of Scotland ("RBS") in three installments

24  of $100,000 each in December 1988, September 1989 and November 1989.  Those funds were

---

[68]  Docket No. 244, Exhibits 101-105; Docket No. 245, Exhibits 106-110; Docket No. 246, Exhibits 111-112; Docket No. 163, TT 816:7-12 (Ms. Korb testimony); Docket No. 167, TT 1630:21-1631:7; 1632:19-24 (Sarah testimony).
[69]  The $200,000 Note was amended on February 2, 1989.
[70]  C.R., Docket No. 202, Decision, at p. 13-14; Docket No. 230, Exhibits, 163, 164, 165.
[71]  C.R., Docket No. 202, Decision, at p. 13.
[72]  C.R., Docket No. 202, Decision, at p. 13.
[73]  C.R., Docket No. 202, Decision, at p. 13; TT 457:10-14 (Ms. Korb testimony).

1  then wired to Sarah's bank account in the same amounts in the same months.  Checks were

2  promptly written to pay down or pay off the Notes that Sarah and Enzo had signed with the First

3  National Bank of Florida in 1981 and 1982.[74]

4         The accounting regarding these loans was handled by Ms. Korb, who kept track of the

5  interest Enzo was to pay.[75]  Ms. Korb corroborated Sarah and Enzo's testimony[76] that these were

6  bona fide loans.  Ms. Korb made all loan arrangements for Sarah.[77]  She reconciled Sarah's bank

7  statements each month[78] and prepared monthly reports of Sarah's income and expenses[79] and

8  consistently and repeatedly testified regarding her understanding that the $200,000 Note and the

9  $100,000 Note, including interest thereon, were to be repaid by Enzo[80] and that the loans were

10  neither gifts to Enzo nor investments in Enzo's business.[81]  Ms. Korb kept track of the interest

11  owed by Enzo on the Notes,[82] reflected Enzo's interest payments on Sarah's monthly reports[83] and,

12  at Mr. Coleman and Sarah's directions, asked Enzo to repay the Notes by letter[84] and telephone

13  calls.[85]

14         Sarah's monthly report for January 1981 shows that the proceeds from the $200,000 Note

15  were deposited in Sarah's account and used to pay Enzo's obligations to the Bessemer Trust in

16  three checks.[86]  Sarah's monthly report for January 1982 shows that the proceeds from the

17  $100,000 Note were deposited in Sarah's account and used to repay GLC (George L. Coleman)[87]

18

19  [74]  C.R., Docket No. 202, Decision, at p. 37.
20  [75]  Docket No. 160, TT 470:22 - 471:22 (Ms. Korb testimony).
   [76]  Docket No. 166, TT 1600:4-18; 1601:7-13; 1602:21-1603:7; 1603:19-1604:3 (Sarah
21  testimony); Docket No. 159, TT 226:7-8; 226:25-227:3; 233:11-19; 234:5-8; 235:12-20; 237:2-4
   (Enzo testimony).
22  [77]  Docket No. 160, TT 413:17 - 414:4 (Ms. Korb testimony).
   [78]  Docket No. 160, TT 394:1-3 (Ms. Korb testimony).
23  [79]  Docket No. 160, TT 394:4-7 (Ms. Korb testimony).
24  [80]  Docket No. 160, TT 424:23-425:12; 426:13-426:17; 429:10-11; 439:13-441:8 (Mr.
   Coleman asked Ms. Korb to get Enzo's signature on note because it was a loan to Enzo)
25  457:10-457:14 (Ms. Korb testimony); Docket No. 164, TT 949:3-952:5  (Ms. Korb testimony).
   [81]  Docket No. 160, TT 453:24-454:2 (Ms. Korb testimony).
26  [82]  Docket No. 160, TT 470:22-471:12 (Ms. Korb testimony).
27  [83]  Docket No. 160, TT 457:15-19 (Ms. Korb testimony).
   [84]  Docket No. 160, TT 474:24-475:8 (Ms. Korb testimony).
28  [85]  Docket No. 160, TT 420:8-16 (Ms. Korb testimony).
   [86]  Docket No. 220, Exhibit 55, at p. 1 [checks #801, #803 & #804, payable to Bessemer
   entities].
   [87]  Docket No. 220, Exhibit 56, at p. 1.

for a bridge loan he arranged for Enzo in the same amount in December 1981, as reflected in Sarah's monthly report for December 1981.[88]   Ms. Korb testified that the proceeds from the two loans represented by the $200,000 Note and the $100,000 Note went to Enzo or to pay Enzo's debts[89] and Sarah's monthly reports corroborate Ms. Korb's testimony.

Sarah's monthly report for December 1988 shows Enzo wired to Sarah's account $100,000 in December 1998 for the specific purpose of paying off the $100,000 Note.[90]  Enzo's wired funds were immediately used to fund Sarah's check #2813 in the amount of $102,366.67 described in Sarah's monthly report for that month as "First National Bank in Palm Beach Payoff of 100,000 note + int."[91]

Sarah's monthly reports for September 1989[92] and November 1989[93] reflect two $100,000 wires from Enzo to Sarah's account that were used in the same respective months, check #3116 "First National Bank – paydown 200,000 note- Enzo Cecconi loans", and check #3211 "First National Bank in Palm Beach payoff interest and principal on $100,000 line of Credit Giuseppe Cecconi," evidencing again that Enzo's wires were made for the specific purpose of paying off the $200,000 Note.[94]

On cross examination, Ms. Korb testified that the three $100,000 wires from Enzo were used to pay off the $200,000 Note and the $100,000 Note,[95] she was instructed to use the three $100,000 wires to immediately pay those Notes and that none of the $300,000 went to pay for the construction of the Pebble Beach Property.[96]  All of this testimony was given with reference to, and corroborated by, detailed financial records prepared more than a decade before this litigation commenced.

[88]  Docket No. 220, Exhibit 55, at p. 11.
[89]  Docket No. 160, TT 431:23-432:6; 453:24-454:2 (Ms. Korb testimony).
[90]  Docket No. 230, Exhibit 165.
[91]  Docket No. 221, Exhibit 62, at p. 24.
[92]  Docket No. 221, Exhibit 63, at p. 17 & 18.
[93]  Docket No. 221, Exhibit 63, at p. 21 & 22.
[94]  Docket No. 230, Exhibit 163, 164 (renewed).
[95]  Docket No. 160, TT 475:19-23; 475:24-35; 494:2-12 (Ms. Korb testimony).
[96]  Docket No. 165, TT 1371:24 - 1382:15 (Ms. Korb testimony).

1

2

      **3.      Trustee Has Failed to Establish Error in the Court's Finding That Enzo Did Not Contribute to the Property.**

3

4

5

6

7

8

9

      In this appeal, Trustee contends that the Bankruptcy Court committed clear error in finding that the $300,000 Enzo wired to Sarah's Florida bank account was *not* used to improve the Pebble Beach Property. In his Appellant's Brief, Trustee completely ignores the great weight of testimony and documentary evidence discussed above. Instead, Trustee argues that the Bankruptcy Court erred because: (1) Enzo's testimony was "contradictory;" (2) unspecified bank records somehow establish error; and (3) Enzo supposedly admitted that the $300,000 he borrowed was indirectly used for improvements to the Property.[97]

10

11

      **a.      Trustee Has Failed to Support the Argument That Enzo's Testimony Was Contradictory.**

12

13

14

15

16

      Trustee has failed to cite this Court to any evidence in the record to support the assertion that Enzo's testimony was contradictory. The Bankruptcy Court made no such finding. In fact, the Bankruptcy Court found both Enzo and Sarah to be credible. This argument should be considered waived, based on Trustee's failure to support it with reference to any specific evidence in the case.[98]

17

18

      **b.      Trustee Has Failed to Explain How Bank Records Indicate Error in the Bankruptcy Court's Findings.**

19

20

21

22

23

24

25

      Also without citing the record or any evidence whatsoever, Trustee claims that the Bankruptcy Court erred, given the *"numerous contemporaneous business records of the Royal Bank reporting [Enzo's] stated purpose."*[99] Neither Sarah, nor this Court should be required to scour the numerous bank records that were admitted into evidence and determine how, if at all, those records would establish error in the Bankruptcy Court's findings. This argument should, therefore, be treated as waived, based on Trustee's failure to cite evidence in the record. Nonetheless, to the extent Trustee is referring to the "May Memo," referenced in the Bankruptcy

26

27

28

---

[97]  Appellant's Brief, p. 26, line 2-7.
[98]  This argument should be considered waived or the brief stricken on this point. See, McGoldrick Oil Co. v Campbell 793 F.2d 649, 653 (5th Cir. 1986) (brief stricken, based in part on failure to cite evidence in the record, citing Fed. Rules App.Proc. 28(a)(3) & (e)); N/S Corp. v Liberty Mut. Ins. Co. 127 F.3d 1145, 1146-47 (9th Cir. 1997) ("The brief leaves it up to the court to attempt to find the asserted information.").
[99]  Appellant's Brief, at p. 26, lines 4-5.

1  Court's Decision, the Bankruptcy Court found that document unreliable.  The Court noted that the
2  memo reflected *"a general understanding by the Bank's personnel of Enzo's financial
3  situation"*[100] and contained at least one obvious factual error.[101]  The Court also found that Enzo
4  credibly testified that he told the bank personnel that the purpose of the borrowing was to release
5  Sarah's collateral so that she could obtain additional financing to fund construction of the house
6  on the Property.[102]  Finally, the Bankruptcy Court noted other evidence from which it could be
7  inferred that the bank did not believe that Enzo had an interest in the Property, further
8  undermining the reliability of the May Memo:

9      *"If the bank had believed that Enzo held a beneficial interest in the*
10      *Property and the $300,000 was going to be used for the Property, it*
11      *is highly likely that the Bank would have taken, or at least demanded,*
        *a security interest in the Property."*[103]

12  On the basis of all of this evidence, Bankruptcy Court found *"the Bank's internal memos*
13  *do not counter Enzo's clear and convincing testimony."*[104]  Trustee has failed to establish clear
14  error in this finding, particularly since it is based on a credibility determination made by the
15  Bankruptcy Court,[105] and is supported by Enzo's testimony.[106]

16      **c.    Enzo Did Not, as Trustee Contends, Testify That the $300,000**
17              **Was Indirectly Used to Pay For Improvements to the Property.**

18  Trustee claims that Enzo admitted that the $300,000 he wired to Sarah's account was *"at*
19  *least indirectly used for the improvements."*[107]  No such admission was made.  The only trial

---

100  C.R., Docket No. 202, Decision, at p. 55.
101  The memo identified a London residence (the Charlwood property) as Sarah and Enzo's residence, when in fact that residence is where the chefs from Enzo's restaurant lived and the Cecconis never lived there.
102  C.R., Docket No. 202, Decision, at p. 55.
103  C.R., Docket No. 202, Decision, at p. 55-56.
104  C.R., Docket No. 202, Decision, at p. 56.
105  The burden of establishing clear error is especially strong where findings are primarily based upon oral testimony and the trial judge has viewed demeanor and credibility of witnesses. Indiana State Employees Assoc. v Negley 501 F.2d 1239, 1242 (7th Cir. 1974).
106  Docket No. 159, TT 263:16-18; 267:10-19; 268:14-19; 268:24-270:17 (Enzo testimony).
107  Appellant's Brief, at p. 26, lines 2-7.

testimony Trustee cites is Enzo's testimony regarding his discussions with bank personnel.[108]  The Bankruptcy Court summarized that testimony as follows:

> *"Enzo was adamant that he did not represent to the branch manager or other Bank personnel that Enzo was funding the Property.  Enzo insisted that he told the Bank that he needed to repay the Notes to permit his wife access to the stocks that secured the Notes so that Sarah could use the collateral to obtain additional financing to fund construction of the house on the Property.  **The court finds Enzo's testimony to be credible.**"*[109]

There was no suggestion in any of Enzo's testimony that he ever told anyone that the $300,000 Enzo wired to Sarah's bank account was used directly *or indirectly* to pay for improvements to the Pebble Beach Property.[110]

In short, Trustee has failed to establish any error in the Bankruptcy Court's finding that Enzo did not contribute any funds toward the Pebble Beach Property.  Trustee utterly fails to address the overwhelming documentary evidence and corroborated testimony of Sarah, Enzo and Ms. Korb supporting that finding.  Moreover, Trustee's assertions of error have no support in the record.

> **4.    The Bankruptcy Court Was Not Clearly Erroneous in Finding that Sarah Did Not Intend to Gift Enzo an Interest in the Pebble Beach Property.**

Once the proponent of a purchase money resulting trust establishes that they provided the funds to purchase the subject property, the analysis shifts to whether there is evidence of an intention to gift an interest in the property to the person who takes title, or joint title with the purchaser.  If a gift is intended, no resulting trust arises, because the titleholder is not merely holding title for the benefit of the purchaser, but rather, the titleholder has a present beneficial ownership interest by virtue of the gift.

One of the disputed legal issues in this case was whether a gift presumption applied on the facts in this case.  Trustee maintained that under California law a rebuttable presumption arose

---

[108]  Appellant's Brief, at p. 26, lines 2-7, Trustee cites Enzo's trial testimony at Docket No. 159, TT 349:19-351:7.
[109]  C.R., Docket No. 202, Decision, at p. 55.
[110]  See footnote 106 above.

1    that Sarah intended to gift one-half of the Property to Enzo by allowing his name to be put on

2    title.  If such a presumption arose, Sarah could only prevail on her claim for a purchase money

3    resulting trust by rebutting the presumption by proving that she did not intend to make a gift.

4         At trial, Sarah maintained that under California law the gift presumption did not arise.  The

5    Bankruptcy Court agreed with Sarah.[111]  In this appeal, Trustee maintains that the Bankruptcy

6    Court was wrong on this point.  That issue is addressed below.  Interestingly, however, the

7    Bankruptcy Court proceeded exactly as though a gift presumption *did* arise, by requiring that

8    Sarah not only prove that she paid for the Property, but that she also prove by clear and

9    convincing evidence that she did not intend to gift Enzo any interest in the Property.[112]

10        Sarah's intent thus became the determinative issue in the case.  The Bankruptcy Court

11   found that she demonstrated by clear and convincing evidence that she had no intention to gift

12   Enzo an interest in the Property and that she intended to maintain full beneficial ownership of the

13   Property.[113]  Trustee contends on appeal that there is no evidence to support this finding, stating:

14   *"There was no evidence that Sarah intended in 1985 when title was taken as community property*

15   *that Enzo would not have a beneficial interest."*[114]

16        Trustee cannot possibly support this assertion, given the record in this case.  In fact, he

17   does not attempt to support it.  Nowhere in his brief does Trustee actually address the great weight

18   of evidence supporting the crucial factual finding regarding Sarah's donative intent.  Rather,

19   Trustee takes issue with some of the Bankruptcy Court's tangential findings on minor factual

20   points, or attempts to re-hash the arguments he made at the trial court about inferences Trustee

21   would have liked the Bankruptcy Court to draw from the evidence.

22

23

---

24   [111]  C.R., Docket No. 202, Decision, at p. 47.

25   [112]  C.R., Docket No. 202, Decision, at p. 49 ("[T]o prevail on her claim [for a resulting trust], Sarah must show by clear and convincing evidence [t]hat she paid for the Property and

26   that she did not intend to give Enzo a beneficial interest in the Property when his name was placed on title.").

27   [113]  C.R., Docket No. 202, Decision, at p. 60-61, 65 ("The evidence shows clearly and

28   convincingly that Sarah held the full beneficial interest in the Property when the Property was acquired and did not intend to gift an interest to Enzo by placing his name on record title.
     Sarah's subsequent acts confirm that Sarah did not intend to gift any interest in the Property to Enzo.").
     [114]  Appellant's Brief, heading for ARGUMENT subsection I.C., p. 25.

1

2
           **a.**     **Sarah Provided Direct Evidence of Her Intent Through Her Consistent and Unequivocal Testimony to the Effect That She Always Considered the Property to be Her Separate Property and Never Intended For Enzo to Have a Present Interest Therein.**

3

4

5
       The most direct evidence of Sarah's intent was Sarah's own testimony that she never

6
intended to do anything to give Enzo an ownership interest in the Pebble Beach Property.[115]

7
Likewise, Enzo testified that he clearly understood from the outset that the Pebble Beach Property

8
was Sarah's and Sarah's alone and Sarah did not intend to make a gift to him of an interest in the

9
property.[116]  This testimony was corroborated by all of the other evidence in the case, including

10
overwhelming evidence that the Cecconis consistently kept *all* of their finances separate

11
throughout their marriage.

12
       The fact that Sarah implemented an estate plan that would have allowed Enzo to live in the

13
Property after her death did not conflict with Sarah's intent to retain sole ownership of the

14
Property.  The Bankruptcy Court found:

15
> *"Neither Enzo nor Sarah understood that Enzo would own the*

16
> *Property if Sarah predeceased Enzo. It was the understanding of*

17
> *both Enzo and Sarah that should Sarah predecease Enzo, Enzo could*
> *live in the Property until Enzo died. Upon Enzo's death, the Property*

18
> *would to pass to Sarah's niece, Caroline Bassett. Enzo understood*
> *that he could not sell the Property or leave it to anyone other than*

19
> *Ms. Bassett. Neither Enzo nor Sarah believed that the Cecconi*

20
> *Residential Trust altered Sarah's sole ownership of the Property."[117]*

21
These findings were supported by the credible testimony of Sarah and Enzo.[118]

22

23

24

25

26

27
[115]  Docket No. 167, TT 1637:3-19; 1687:8-11; 1687:17-22 (Sarah testimony).
[116]  Docket No. 159, TT 189:7-10; 198:25-199:2; 204:6-23; 207:4-208:1 (Enzo testimony).

28
[117]  C.R., Docket No. 202, Decision, p. 30.
[118]  Docket No. 167, TT 1686:11-16; 1686:22-24; 1687:12-22; 1785:1-1786:6; 1789:11-24 (Sarah testimony); Docket No. 159, TT 301:8-302:7; 302:9-14; 302:24-303:14; 303:19-304:11 (Enzo testimony).

1

2

3

        **b.**      **Sarah and Enzo's Conduct With Respect to the Pebble Beach Property Was Consistent With Sarah's Sole Beneficial Ownership.**

4

5

6

7

8

9

10

11

12

        The Cecconis' entire course of conduct regarding the Pebble Beach Property demonstrates that they both believed the property was Sarah's separate property. From the very beginning, Sarah made all the decisions regarding the property, without participation by Enzo. Enzo had nothing to do with the acquisition of the property. He did not search for the property. He was not in California when Sarah (alone) signed the purchase contract.[119] Enzo did not know that Sarah was purchasing the lot on Del Ciervo until after Sarah had purchased it.[120] In fact, Enzo was not in favor of Sarah purchasing property in Pebble Beach. Enzo did not want to live in America (even for part of the year), because he felt it is too far away from his culture, his job, his friends and his way of living.[121] He prefers living in Europe in a large city.[122]

13

14

15

16

17

        Sarah, on the other hand, prefers to live away from the city and was determined to own her own home in Pebble Beach. She spent years developing the design on her own,[123] selecting the furnishings, fixtures, and colors.[124] She hired the professionals on her own,[125] including the architect, the builder, an attorney, and a landscape designer. She hired the house staff herself[126] and has always paid their wages herself.[127]

18

19

20

        From the time she purchased the property to the present, Sarah has used her separate property funds to pay *every* expense associated with the property. Enzo has not contributed one dime to the Pebble Beach Property,[128] and he testified that *"It was obvious that it was her*

21

22

23

24

25

26

27

28

[119]  Docket No. 159, TT 182:15-22; 184:13-25; 185:2-4 (Enzo testimony).
[120]  Docket No. 159, TT 186:10-19 (Enzo testimony).
[121]  Docket No. 159, TT 185:19-22 (Enzo testimony).
[122]  Docket No. 158, TT 152:4-8 (Enzo testimony).
[123]  Docket No. 159, TT 191:11-21 (Enzo testimony); Docket No. 167, TT 1638:17-1639:23 (Sarah testimony).
[124]  Docket No. 159, TT 191:22 - 192:4 (Enzo testimony).
[125]  Docket No. 159, TT 192:1-23 (Enzo testimony); Docket No. 167, TT 1640:2-18; 1640:25-1641:2 (Sarah testimony).
[126]  Docket No. 167, TT 1632:13-18 (Sarah testimony).
[127]  Docket No. 167, TT 1632:19-24 (Sarah testimony).
[128]  Docket No. 159, TT 185:25 - 186:9; 264:3-5 (Enzo testimony); Docket No. 167, TT 1630:21 - 1631:7 (Sarah testimony); Docket No. 162, TT 682:21-22 (Ms. Korb testimony). Although Spicer argued in his trial brief that Enzo had contributed $300,000 to the Pebble Beach Property, that contention was conclusively rebutted at trial with evidence that Enzo's transfer of $300,000 to Sarah in 1989 and 1990 was to repay loans that Enzo had taken with the First

1    *property. I never thought for a minute that it was otherwise.*"[129]  Enzo has never claimed any

2    interest whatsoever in the Pebble Beach Property[130] and has never listed the Pebble Beach

3    Property as his asset on any loan application or any financial statement.[131]  Enzo also testified

4    unequivocally that he never told anyone from the Royal Bank of Scotland that he was building a

5    house in Pebble Beach, although he did tell Bank employees about the house *his wife* was

6    building in California.[132]

7        Sarah and Enzo's financial records with respect to the Pebble Beach Property also reflect

8    their understanding that the property was Sarah's alone.  When Sarah was advised to convert the

9    purchase and construction financing to a conventional mortgage, Sarah's financial statement was

10    submitted to the bank, not Enzo's.[133]

11        Third party witnesses who know the Cecconis well, Carla Korb, Gary Vandeweghe, Jane

12    Steel and Sarah's mother, Elizabeth Montagu, all testified that they understood the Pebble Beach

13    Property to belong to Sarah only, and that Sarah referred to the Pebble Beach Property as "her

14    property," not "our property."[134]

15        The Cecconis have treated the Pebble Beach Property in the same manner that they treated

16    the California townhouse in which they held joint title (discussed below).  Despite the status of

17    title, the Cecconis have consistently acted in recognition of their clear understanding that the

18    Pebble Beach Property is Sarah's property, and Sarah's alone.

19

20

21

22

23

24    _____

    National Bank in Florida. Docket No. 165, TT 1371:24 1382:15 (Ms. Korb testimony); Docket
    No. 159, TT 236:1-238:24; 240:9-241:3 (Enzo testimony).

25        [129]  Docket No. 159, TT 189:7-10 (Enzo testimony).

    [130]  Docket No. 159, TT 204:21-15 (Enzo testimony).

26        [131]  Docket No. 159, TT 261:8-23 (Enzo testimony).

27        [132]  Docket No. 159, TT 263:16-18; 264:3-5; 267:10-19; 268:14-19; 268:24-270:17 (Enzo
    testimony).

28        [133]  Docket No. 162, TT 689:22 - 690:4 (Ms. Korb testimony).

    [134]  Docket No. 163, TT 822:2-4; 823:9-16 (Ms. Korb testimony); Docket No. 171, TT
    2034:14-20; 2032:13-17; 2032:18 - 2033:2 (Montagu testimony); Docket No. 171, TT 2062:17-
    23 (Steel testimony); Docket No. 170, TT 1978:18 - 1979:15; 1984:4 (Vandeweghe testimony).

1

2    **c.    The General Financial Relationship of the Cecconis Throughout
        Their 29-Year Marriage is Consistent With Sarah's Sole
3        Ownership of the Property.**

4        The Cecconis testified extensively about the fact that they not only lived in separate

5    locations for most of the year during most of their marriage,[135] but they kept their finances

6    separate as well.  Sarah testified that she and Enzo did not expressly discuss and agree that they

7    were going to keep their finances separate during their marriage, they just did it.[136]  They

8    understood from the beginning that "what was hers was hers and what was his was his."[137]  Later

9    this developed into a general understanding that the property in America belonged solely to Sarah,

10   while the business and property in Europe belonged solely to Enzo.[138]

11       The Cecconis' testimony regarding this understanding and their approach to their separate

12   financial affairs was corroborated by the testimony of Gary Vandeweghe, an attorney and long-

13   term friend of Sarah's.[139]  This understanding governed all of their financial affairs.

14   Consequently, there was never any question that Enzo's restaurant business in Europe was his

15   alone.[140]  Similarly, when Sarah received her inheritance in 1979, she and Enzo did not have to

16   talk about keeping Sarah's assets separate.  Sarah testified that *"it was just automatic,"*[141] and

17   Enzo testified that he understood that Sarah's inheritance was hers alone.[142]

18       It is significant that both Enzo and Sarah testified that they do not believe they have ever

19   purchased any asset together.[143]  One explanation for the Cecconis' approach to their finances is

20

21

22   ───────────────
     [135]  Docket No. 158, TT 151:8 - 156:25 through Docket No. 159, TT 157:1-168:23 (Enzo
23   testimony); For 22 years, between 1978 and 2000, the Cecconis spent only a few months out of
     the year together.
24       [136]  Docket No. 166, TT 1596: 10-20 (Sarah testimony).
         [137]  Docket No. 166, TT 1597:9-14 (Sarah testimony); Docket No. 158, TT 130:24-25 (Enzo
25   testimony).
         [138]  Docket No. 159, TT 190:2-20 (Enzo testimony).
26       [139]  Docket No. 170, TT 1983:14 - 1984:14 (Vandeweghe testimony).
         [140]  Docket No. 158, TT 130:8-25 (Enzo testimony).
27       [141]  Docket No. 166, TT 1596:20 - 1597:3 (Sarah testimony); Docket No. 159, TT 172:14 -
     173:1 (Enzo testimony).
28       [142]  Docket No. 159, TT 172:14-173:1 (Enzo testimony).
         [143]  Docket No. 159, TT 261:21-25 (Enzo testimony); Docket No. 166, TT 1594:11 - 1596:3
     (Sarah testimony).

1   that Enzo, having been born and raised in Italy, was unfamiliar with the concept of community

2   property.[144]  Enzo's understanding of Italian law is that there is no community property.[145]

3          Sarah's assets were managed by her father and were kept entirely segregated from Enzo's

4   financial affairs.[146]  She used different banks than Enzo did.[147]  The only joint accounts they ever

5   had were in Pebble Beach in recent years, at Wells Fargo Bank, where they each maintained an

6   account on which the other was a second signatory.  Even then, they did not deposit funds into

7   each other's accounts.[148]

8          Sarah had no involvement whatsoever in Enzo's relationship with the Royal Bank of

9   Scotland.[149]  She did not have an account at the RBS.[150]  She did not provide security for Enzo's

10  loans from the Bank,[151] and she did not provide her personal financial information to the Bank.[152]

11         Sarah filed her tax returns separately from Enzo's.[153]  When Sarah received her monthly

12  portfolio statements from Carla Korb, she did not show the statements to Enzo.[154]  Sarah decided

13  to purchase both her Townhouse and the lot on which she later built the Pebble Beach Property

14  without Enzo's input,[155] without financial contribution from Enzo,[156] and despite the fact that

15  Enzo did not like the idea of living in California.[157]

16

17

18

19     [144] Docket No. 159, TT 174:9-24 (Enzo testimony).
       [145] Id.
20     [146] Docket No. 160, TT 390:8 - 391:9; 404:1-2 (Ms. Korb testimony).
       [147] Sarah never banked with the RBS.  Docket No. 166, TT 1585:10 - 1586:8 (Sarah
21  testimony).
       [148] Docket No. 166, TT 1593:9 - 1594:10 (Sarah testimony); Docket No. 159, TT 200:18 -
22  202:15 (Enzo testimony).
       [149] Docket No. 166, TT 1585:10 - 1586:8 (Sarah testimony).
23     [150] Docket No. 166, TT 1585:13-15 (Sarah testimony).
       [151] Docket No. 158, TT 140:1-4 (Enzo testimony).
24     [152] Docket No. 166, TT 1585:19-21 (Sarah testimony).
       [153] Docket No. 166, TT 1597:4-8 (Sarah testimony); Docket No. 223, Exhibits 89-90; Docket
25  No. 224, Exhibits 91-100 (Sarah tax returns).
       [154] Docket No. 166, TT 1591:2-4 (Sarah testimony).
26     [155] Docket No. 166, TT 1614:16 - 1615:5; 1616:23 - 1618:9 (Sarah testimony); Docket No.
27  159, TT 175:9 - 177:6 (Enzo testimony).
       [156] Docket No. 159, TT 175:23 - 176:23 (Enzo testimony).
28     [157] Docket No. 166, TT 1618:10-15 (Sarah testimony); Docket No. 159, at p. 185:5-24 (Enzo
    testimony).

1    Similarly, Enzo did not ask for Sarah's input or approval when he decided to open a

2  restaurant in London.[158]  Sarah had no ownership interest in Enzo's restaurant business,[159] and

3  didn't even know how the ownership was structured.[160]  Sarah never contributed money to Enzo's

4  business, other than loans she made to him.[161]  Enzo only talked with Sarah about his financial

5  affairs once, when he was in the process of "buying-out" his partner in Enzo's Paris restaurant.[162]

6  Enzo also decided to open his Paris restaurant without telling Sarah.  She learned that news from a

7  neighbor.[163]

8    Sarah had no interest in Enzo's London residence, which was owned by Enzo's business,

9  "Cecconi's Ltd." and was referred to at trial as "the Mews property."[164]  Sarah did not assist in

10  selecting the Mews property,[165] and was not even in London when the property was purchased.[166]

11  Sarah never managed the Mews property, Enzo did.[167]  Sarah did not contribute to the expenses of

12  the Mews property.[168]  Enzo's business purchased the Mews property and paid all the expenses of

13  that property.[169]

14    In short, when it came to financial affairs, the Cecconis had a somewhat unusual marriage

15  in that they never comingled any of their assets or financial affairs.  This evidence corroborated

16  Sarah's testimony that she would never have considered giving Enzo a one-half interest in her

17  home.

18

19

20

21

22    [158]  Docket No. 166, TT 1582:21-25 (Sarah testimony).
    [159]  Docket No. 166, TT 1583:1-7 (Sarah testimony); Docket No. 158, TT 130:12-25 (Enzo
23  testimony).
    [160]  Docket No. 166, TT 1583:17 - 1584:2 (Sarah testimony); Docket No. 158, TT 132:25 -
24  133:2 (Enzo testimony).
    [161]  Docket No. 158, TT 131:1-4 (Enzo testimony).
25    [162]  Docket No. 166, TT 1584:9-18 (Sarah testimony).
    [163]  Docket No. 166, TT 1584:23-1585:3 (Sarah testimony).
26    [164]  Docket No. 158, TT 148:25 - 149:2 (Enzo testimony).
    [165]  Docket No. 158, TT 149:11-13 (Enzo testimony).
27    [166]  Docket No. 158, TT 149:25 - 150:2 (Sarah testimony).
    [167]  Docket No. 158, TT 151:3-7 (Enzo testimony).
28    [168]  Docket No. 158, TT 150:14 - 151:2 (Enzo testimony).
    [169]  Docket No. 158, TT 150:14 -21 (Enzo testimony).

1

2

3

        **d.**      **The Manner in Which the Cecconis Treated the Ownership and Disposition of the California Townhouse Corroborates Sarah's Testimony Regarding Her Intent Not to Gift Enzo Any Interest in Her Real Property.**

4

5

6

7

8

9

10

11

Other than the Cecconis' consistent and corroborating testimony about their understanding of the ownership of the Pebble Beach Property, perhaps the most credible and probative evidence on the issue of Sarah's donative intent regarding the Pebble Beach Property is the manner in which the Cecconis treated the townhouse in Pebble Beach that Sarah purchased in 1984, prior to the purchase of the Pebble Beach Property. Like the Pebble Beach Property, title to the townhouse was held by Sarah and Enzo in community property. Also like the Pebble Beach Property, the Cecconis treated the townhouse in all other respects as exclusively Sarah's separate property.

12

13

14

15

16

Sarah purchased and maintained the townhouse with her separate property funds.[170] Although Sarah initially received title to that property in her name only, title was inexplicably changed to Sarah and Enzo as community property.[171] Sarah does not recall any purpose for changing the title, other than that someone asked her to sign the deed.[172] Sarah considered that the townhouse was her property,[173] and she never intended to give Enzo an interest in that property.[174]

17

18

19

20

21

Most importantly, when it came time to sell the townhouse, the Cecconis treated the property as solely Sarah's. Immediately before the townhouse was sold, Enzo quitclaimed his interest in the townhouse back to Sarah.[175] Sarah received all of the proceeds of the sale[176] and she paid all of the capital gains taxes on the sale.[177] Enzo did not expect any of the proceeds of the sale of the townhouse, because he understood that the property belonged to Sarah.[178]

22

23

24

25

26

27

28

---

[170] Docket No. 166, TT 1610:5-7; 1614:6-15 (Sarah testimony); Docket No. 159, TT 177:19-21; 180:24 - 181:7 (Enzo testimony).
[171] Docket No. 232, Exh. H, Deed transferring townhouse from Sarah to Sarah and Enzo as community property.
[172] Docket No. 166, TT 1614:2-5 (Sarah testimony).
[173] Docket No. 166, TT 1610:8-13 (Sarah testimony).
[174] Docket No. 166, TT 1613:22 - 1614:1 (Sarah testimony).
[175] Docket No. 233, Exhibit AK (quitclaim deed from Enzo to Sarah).
[176] Docket No. 166, TT 1615:17-19 (Sarah testimony).
[177] Docket No. 166, TT 1615:8-12 (Sarah testimony).
[178] Docket No. 159, TT 179:3-18 (Enzo testimony).

Appellee's Brief                                                                         

1    Thus, while the Cecconis held title to the townhouse in community property the entire time

2    they owned it, they treated the property in all other respects as solely Sarah's – as they have the

3    Pebble Beach Property.  Sarah clearly did not gift an interest in the property to Enzo by holding

4    title in community property with Enzo.

5             e.    **The Documentation of the First National Bank of Palm Beach**

6                   **Loans and Enzo's Reimbursement of Interest to Sarah Supports**

7                   **Sarah's Testimony Regarding Her Intent to Maintain Separate**

                    **Finances and Separate Property.**

8

9    The separate nature of the Cecconis' financial lives is also reflected in the manner in which

10   the $300,000 in loans from the First National Bank of Palm Beach were handled.  Soon after she

11   received her inheritance, Sarah agreed to help Enzo pay off a $200,000 loan from Bessemer Trust,

12   which had been guaranteed by Sarah's mother.  Rather than give Enzo the money (which she

13   easily could have done), Sarah agreed to allow her stock be used as collateral for a loan for which

14   Enzo would be responsible.  Although Enzo and Sarah both signed the bank promissory note,[179]

15   Sarah and Enzo had an understanding that it was Enzo's debt to repay.[180]  The accounting for this

16   loan, as well as the later $100,000 loan used to buy out Enzo's Paris business partner, Mr. Gruet,

17   was handled by Carla Korb, who kept track of the interest Enzo was to pay.[181]

18   These loan transactions were consistent with the way the Cecconis operated, keeping their

     financial affairs separate.

19

20           f.    **Holding Title in Community Property For Estate Planning**

21                 **Purposes is Not Inconsistent With Sarah's Intent to Maintain**

                   **Sole Beneficial Ownership of the Property.**

22   In subsection I.D. of his Argument, Trustee essentially argues that the Court should have

23   concluded that Sarah intended for Enzo to own an interest in the Property, based on the fact that

24   Sarah allowed Enzo to remain on title in connection with Sarah's estate plan.  Trustee maintains

25   that Sarah could only have achieved her estate-planning goals if Enzo actually owned a beneficial

26   interest in the Property and, therefore, Sarah must have intended that Enzo own a beneficial

27   interest.

28

---

[179]  Docket No. 230, Exhibits, 163, 164, 165.
[180]  Docket No. 160, TT 457:10-14 (Ms. Korb testimony).
[181]  Docket No. 160, TT 470:22 - 471:22 (Ms. Korb testimony).

The Bankrupcty Court rejected this argument, stating:

> *"[T]he resulting trust cases permit Sarah to hold full beneficial interest in the Property if that was the original intent of the parties, even if so finding would eliminate any tax benefit for maintaining the Property as community property."*[182]

The Bankruptcy Court thus found that Sarah's intent regarding ownership of the Property did not necessarily conflict with her intent to derive whatever benefits might be gained in holding title in community property.  Trustee simply argues that the Bankruptcy Court should have weighed the evidence differently and should not have believed Sarah.  That is not "clear error."

### 5.    Even the Bankruptcy court's Tangential Factual Findings Regarding Sarah's Intent Are Correct.

Trustee appears to be arguing at subsection I.C. of the Argument portion of his brief that the Bankruptcy Court committed clear error in making the central factual finding that Sarah intended to retain sole ownership of the Property.  Trustee never actually argues that point, however, and he never mentions all of the foregoing evidence supporting that finding.  Instead, what Trustee actually argues is that the Bankruptcy Court erred in making *other* findings that are only tangentially related to the critical issue of Sarah's intent.  As to all of these findings challenged by Trustee, they are either correct, or were not even made by the Bankruptcy Court in the first place.

### a.    The Bankruptcy Court Was Not Clearly Erroneous in Finding That Sarah and Enzo Did Not Own Any Property Together.

Trustee argues in subsection I.C. of his brief that the Bankruptcy Court was clearly erroneous in finding that Enzo and Sarah did not own any property together.  Trustee points out that this finding conflicts with evidence that Sarah and Enzo held title to the Pebble Beach Property as community property from the date of its acquisition.[183]  Of course, the ultimate issue in the case was whether Enzo held any ownership interest in the Property beyond bare title.  The

---

[182]  C.R., Docket No. 202, Decision, at p. 61.
[183]  Appellant's Brief, p. 26, lines 11-12.

1   Court determined that he did not.  Sarah and Enzo both testified that they believed they have

2   never purchased property together.[184]

      **b.**  **The Bankruptcy court Was Not Clearly Erroneous in Finding**
3
          **That Contractors, Vendors and Others Assumed That the**
4
          **Cecconis Owned the Property Together.**
5

6     Another assertion Trustee makes on an insignificant point is that there is no evidence in the

7   record to support the Bankruptcy Court's finding that contractors and other agents retained by the

8   Cecconis in connection with the development of the Property assumed that Enzo was an owner

9   based solely on "record title."[185]  This point relates to the following statement in the Decision:

10      *"Certain vendors, contractors and others who did not know of Sarah*
   *and Enzo's special financial relationship merely assumed that*
11      *because Sarah and Enzo were married, Sarah and Enzo owned the*
12      *Property together."[186]*

13     There is evidence, however, from which the Bankruptcy Court could have inferred this

14   fact.  Sarah testified that she never explained the financial aspects of her marriage, or the specifics

15   of the ownership of the Property to any of the contractors, architects or other vendors and

16   professionals she hired.[187]  Given that evidence, and the general tendency most people would have

17   to assume that a married couple would own real property together, the Court was permitted to

18   draw the inference that the contractors and other parties in this case made a similar assumption.

19   Thus, the finding is not without evidentiary support.  The record contains ample evidence from

20   which the Bankruptcy Court could draw this inference.

      **6.**  **The Bankruptcy Court Did Not Make the Factual Finding That Sarah**
21
          **Intended For Enzo to Hold His Interest in Trust For Her.**
22

23     In subsection I.C.2. of his brief, Trustee claims that *"There was no evidence that Sarah*

24   *intended in 1985 for Enzo to hold his interest in trust for her."*[188]  However, the Bankruptcy Court

25   made no such finding and was not required to do so to reach the result it did.

26

27      184 Docket No. 159, TT 261:21-25 (Enzo testimony); Docket No. 166, 1594:11-1596:3 (Sarah
 testimony).
28      185 Appellant's Brief, p. 27, lines 15-19.
   186 C.R., Docket No. 202, Decision, at p 17-18.
   187 Docket No. 167, TT 1642:10-15; 1642:19-22.
   188 Appellant's Brief, p. 26, lines 18-19.

1

2

       **7.**      **The Bankruptcy Court Did Not Make the Factual Finding That Sarah Understood That Record Title Did Not Convey a Beneficial Interest.**

3

       Trustee claims *"There was no evidence that in 1985 Sarah had any understanding that*

4

*'record title' did not convey a beneficial interest."*[189]  The Bankruptcy Court made no such

5

finding and Trustee has failed to show how the absence of such evidence is at all relevant.

6

       **8.**      **The Bankruptcy Court Did Not Make the Factual Finding That Mr.**

7

                  **Sanders Assumed Enzo Was an Owner of the Property Based Solely on**

8

                  **Record Title.**

9

       Trustee claims that the Bankruptcy Court committed clear error in finding that Sarah's

10

attorney, Mr. Sanders, assumed Enzo was an owner of the Property based solely on record title.[190]

11

The Court made no such finding.  Rather, the Court declined to draw the inference about Mr.

12

Sanders' state of mind that Trustee urged.

13

       Trustee offered into evidence a letter dated June 2, 1993 sent to Sarah by her father's

14

lawyer/accountant, Mr. Sanders,[191] the purpose of which Mr. Sanders stated was to *"follow up*

15

*with you on the two other agenda items that we discussed during our meeting with your*

16

*father."*[192]  This was a meeting that Sarah had attended,[193] in which Mr. Sanders and Mr. Coleman

17

discussed *"additional steps in trying to maintain [Sarah's] stock portfolio and to reduce [her]*

18

*cash flow requirements."*[194]  In his letter, Mr. Sanders recommends that *"Mr. Cecconi, as co-*

19

*owner of the property, should reimburse [Sarah] for 50% ($317,509) of the expenditures paid for*

20

*the Pebble Beach property."*[195]

21

       Trustee argued at trial that the letter was evidence that Mr. Sanders understood that Enzo

22

owned the Property and that he must have gained that understanding from Sarah.  Sarah testified,

23

however, that although she attended the meeting referred to in Mr. Sanders' letter, she was not

24

concerned about her finances at the time and did not say anything at the meeting.[196]  Sarah

25

26

27

28

---

[189]  Appellant's Brief, p. 27, lines 5-6.
[190]  Appellant's Brief, p. 27, lines 24-25.
[191]  Docket No. 233, Exhibit AY.
[192]  Docket No. 233, Exhibit AY, first paragraph.
[193]  Docket No. 167, TT 1643:23 - 1644:4 (Sarah testimony).
[194]  Docket No. 233, Exhibit AT, first paragraph.
[195]  Docket No. 233, Exhibit AY, p. 3, first paragraph.
[196]  Docket No. 167, TT 1644:11-18 (Sarah testimony).

1  understood at the time of the meeting that Sanders was recommending that Enzo repay the money

2  that he had borrowed from Sarah as of that time.[197]

3      Sarah did not respond to Mr. Sanders or otherwise take any action in response to Mr.

4  Sanders' letter.[198]  She never asked Enzo to make the recommended contributions and she never

5  spoke with her father about the letter.[199]  Sarah testified that she did not feel the need to correct

6  Mr. Sanders about Enzo being a co-owner of the Pebble Beach Property, because Sarah never

7  thought of Enzo being a co-owner in any way.[200]

8      In rejecting Trustee's contention that the letter was evidence of Enzo's co-ownership of the

9  Property, the Bankruptcy Court stated:

10      *"Trustee puts much stock in the letter to Sarah from Mr. Sanders*
11      *that suggests Sarah ask Enzo for a contribution of his portion of the*
        *Property expenses. However, there is no evidence that Mr. Sanders*
12      *based his understanding of the ownership of the Property on*
13      *anything other than a reliance on the record title."*[201]

14      Thus, the Bankruptcy Court declined to draw the inference from the letter urged by

15  Trustee.  The Court did not make a factual finding regarding the source of Mr. Sanders'

16  understanding and was not required to in order to decide the case.

17      **9.    The Factual Findings Challenged by Trustee, Even if Erroneous, Are**
18          **Not Essential to the Judgment and Would Constitute Harmless Error.**

19      Setting aside for the moment the Bankruptcy Court's primary factual finding regarding

20  Sarah's intent (which Trustee does not really challenge), the only factual findings that were

21  *actually made* by the Bankruptcy Court in connection with Sarah's claim and are *actually being*

22  *challenged* on appeal are: (1) that Sarah and Enzo did not own any property together; and (2) that

23  contractors, vendors and others assumed that the Cecconis owned the Property together.  Neither

24  of those findings, even if erroneous, would be a basis for reversal of the judgment.

25      Under the "harmless error rule" set forth in Rule 61 of the Federal Rules of Civil Procedure

26  and 28 U.S.C. § 2111, a reviewing court must disregard errors or defects in the judgment that do

27
28
[197] Docket No. 167, TT 1644:19 - 1645:4 (Sarah testimony).
[198] Docket No. 167, TT 1645:24 - 1646:1 (Sarah testimony).
[199] Docket No. 167, TT 1646:2-10 (Sarah testimony).
[200] Docket No. 167, TT 1646:18 - 23 (Sarah testimony).
[201] C.R., Docket No. 202, Decision, at pp. 61.

1  not affect the substantial rights of the parties.  In the Ninth Circuit, a rebuttable presumption of

2  harm or prejudice is presumed and it is the respondent's burden to establish that the error is *"more*

3  *probably than not harmless."[202]*

4      Even if the Bankruptcy Court was clearly erroneous in making the two challenged findings

5  – which Sarah contends it was not – it does not constitute reversible error because other findings

6  (which are not clearly erroneous) are sufficient to support the judgment.[203]  Here, the judgment is

7  supported solely by the Bankruptcy Court's finding that Sarah proved by clear and convincing

8  evidence that she and Enzo always intended for the Property to remain Sarah's sole and separate

9  property.  A finding that Enzo and Sarah *did* own some *other* property together would not change

10 the outcome in the case, because it is not a material point in any respect.  Similarly, if the

11 Bankruptcy Court had not found that contractors and vendors assumed the Cecconis owned the

12 Property together, it would not likely have changed the result.

13 **II.    Trustee's Challenge to the Bankruptcy Court's Findings and Ruling in Connection
14         With Trustee's Motion for Sanctions is Premature, Because no Order or Judgment
15         Has Been Entered on the Motion for Sanctions.**

16     Trustee challenges factual findings made by the Bankruptcy Court, and the Court's

17 exercise of discretion in denying Trustee's request for terminating or evidentiary sanctions in

18 connection with Trustee's Motion For Evidentiary Sanctions filed at the outset of trial.  However,

19 while the Court set forth in its Decision certain factual findings and indicated how and why it

20 would rule on Trustee's Motion For Sanctions, no order has been entered by the Court.  The only

21 judgment entered in this case is limited to a determination of the substantive claims of the parties

22 and does not decide Trustee's Motion For Sanctions.  Rather, the Decision includes a statement

23 reserving the Court's jurisdiction to later rule on the Motion for Sanctions:

24          *"The Court reserves jurisdiction to determine the appropriate relief,
            if any, to be awarded to defendant A.C. SPICER on the basis of
25          defendant A.C. SPICER'S Motion For Evidentiary Sanctions."[204]*

26     Any issue related to Trustee's Motion for Sanctions is premature.[205]

27

28 _____
   [202]  *See also, Obrey v Johnson,* 400 F.3d 691, 699 (9th Cir. 2005).
   [203]  *Goodman v United States* 398 F.2d 879 (9th Cir. 1968)
   [204]  C.R., Docket No. 209, Judgment.
   [205]  See, Bankr. Rule 8001.

III.    **The Bankruptcy Court Was Not Clearly Erroneous in its Factual Findings Regarding Trustee's Motion for Sanctions.**

Sarah addresses the issues raised in connection with Trustee's Motion For Sanctions, in the event the District Court somehow considers those issues as part of Trustee's appeal of the judgment in the case.

At the beginning of trial, Trustee brought a Motion For Evidentiary Sanctions and sought dismissal of Sarah's case or adverse inferences based on Sarah's removing Enzo's name from some of the property insurance statements produced in discovery.  The motion was also based on Trustee's allegation that Sarah had failed to conduct a thorough review of documents in responding to discovery requests and had concealed documents in discovery.  In this appeal, Trustee challenges the two principal factual findings made by the Bankruptcy Court in denying that motion.  The first finding is that Sarah *"did not willfully deceive the Court regarding relevant documents."*[206]

A.    **The Bankruptcy Court Was Not Clearly Erroneous in Finding That Sarah Did Not Willfully Deceive the Court Regarding Relevant Documents in Her Possession or Control.**

Trustee contends that the Bankruptcy Court committed clear error in finding that Sarah did not willfully deceive the Court in producing documents.  Trustee argues that Sarah's review of documents was *"exceptionally limited."*[207]  The record shows, however, that Sarah and her counsel attempted in good faith to respond to Spicer's discovery requests and that  Spicer's criticism of Sarah's search for responsive documents is unwarranted.

Spicer's First Request for Production[208] requests Sarah's business and financial records with respect to various aspects of the Pebble Beach Property and her trusts.  Sarah was fortunate to have Carla Korb available to assist her in locating and producing documents responsive to Spicer's document request.  Ms. Korb administered and maintained all of Sarah's financial and

---

[206]   Appellant's Brief, at subsection V.A, p. 43, lines 20-23; C.R., Docket No. 202, Decision, at p. 37.

[207]   Appellant's Brief, at subsecction V.A.1., p. 44, line 7.

[208]   Docket No. 236, Exhibit DG.  Spicer served only one Request For Production of Documents on Sarah.

1  business records at the times relevant to this case,[209] and prepared many of the documents,[210]

2  including monthly reports for years 1980 through 1989.[211]  Ms. Korb had first-hand knowledge of

3  Sarah's income and expenses,[212] first-hand knowledge of Sarah's stock portfolio,[213] and first-hand

4  knowledge of the income generated from Sarah's stocks.[214]  She made all of Sarah's loan

5  arrangements[215] and hence, was intimately familiar with the financing for the purchase of the

6  Pebble Beach Property and the construction of Sarah's house.

7          When Mr. Coleman died in 1997, Ms. Korb packed Sarah's files in boxes and sent them to

8  Sarah in Pebble Beach during February 1998.  When Sarah retained Ms. Korb in 2002 to assist in

9  finding documents relevant to this litigation, Ms. Korb found the boxes of files in roughly the

10 same condition as when she had packed them.[216]

11         Ms. Korb is effectively the custodian of Sarah's books and records.  Ms. Korb testified she

12 was personally familiar with most of the documents that Sarah produced in this litigation,[217]

13 because she took care of the majority of them.[218]  She is much more familiar with Sarah's

14 documents than either Sarah or Sarah's counsel ever could have been.

15         Ms. Seid testified that she gave Sarah a copy of Spicer's First Request for Production and

16 asked her to search her records for any document responsive to the request,[219] that Ms. Korb and

17 Sarah reviewed all of Sarah's financial and business files to locate documents that would be

18 responsive to Spicer's First Request for Production,[220] that Ms. Seid was never refused access to

19 Sarah's files,[221] and that Ms. Seid relied primarily on Ms. Korb to locate responsive documents.[222]

20 Ms. Seid also testified that she found Ms. Korb and Sarah to be diligent in responding to Spicer's

21

22 _____
[209] See footnote 47 above.
[210] Docket No. 160, TT 417:24-418:1 (Ms. Korb testimony).
23 [211] Docket No. 160, TT 398:6-400:15 (Ms. Korb testimony).
[212] Docket No. 160, TT 396:20-22 (Ms. Korb testimony).
24 [213] Docket No. 160, TT 396:17-19 (Ms. Korb testimony).
[214] Docket No. 160, TT 396:20-22 (Ms. Korb testimony).
25 [215] Docket No. 160, TT 413:17-414:4 (Ms. Korb testimony).
[216] Docket No. 160, TT 417:14-23 (Ms. Korb testimony).
26 [217] Docket No. 160, TT 417:6-8 (Ms. Korb testimony).
[218] Docket No. 160, TT 417:11-12 (Ms. Korb testimony).
27 [219] Docket No. 172, TT 2135:2-10 (Seid testimony).
[220] Docket No. 173, TT 2263:25-2264:15 (Ms. Korb testimony).
28 [221] Docket No. 173, TT 2265:5-11 (Seid testimony).
[222] Docket No. 173, TT 2283:23-2284:8 (Seid testimony).

1  supplemental request,[223] and that there was no indication Sarah or Ms. Korb were withholding any

2  documents from Spicer.[224]  While Ms. Seid did not personally perform the search for documents,

3  she spoke with Sarah and Ms. Korb during their search and was apprised of what they were and

4  were not finding in Sarah's files.[225]

5          Ms. Seid, Ms. Korb and Sarah knew at the outset of the case that establishing a purchase

6  money resulting trust required evidence that Sarah had paid for the Pebble Beach Property.

7  Accordingly, the relevant financial and business documents and the documents Spicer would most

8  likely be seeking in discovery were fairly obvious.[226]  The fact that Ms. Korb started her search for

9  records before Spicer served his First Request For Production of Documents (Exhibit DG) in no

10  way supports Spicer's "theory" that Sarah produced "selective" documents and only documents

11  helpful to her.  Indeed, Sarah produced over 2,600 pages of relevant documents,[227] including

12  numerous documents that listed Enzo as an owner of the Pebble Beach Property and were not,

13  therefore,  particularly helpful to Sarah's case.

14          Ms. Seid testified that Sarah's responses were timely and thorough.[228]  Sarah's initial

15  production was approximately 2,000 pages,[229] occurring on May 1 and May 2, 2003.[230]  Although

16  Spicer's document requests required that Sarah and Ms. Korb review thousands of pages of

17  documents, Sarah accomplished the 2,000 page production, including copying and bates

18  stamping, within thirty days of receiving Spicer's request.

19          Then, seven months went by.  In December 2003, Spicer's counsel sent a request that

20  Sarah supplement her prior production.[231]  Ms. Seid provided Spicer's request for a supplemental

21  production to Sarah and Ms. Korb[232] and Sarah thereafter produced hundreds of additional pages

22

23     223  Docket No. 172, TT 2143:20-2145:5 (Seid testimony).
       224  Docket No. 173, TT 2290:4:22 (Seid testimony).
24     225  Docket No. 173, TT 2291:20-25 (Seid testimony); Docket No. 172, TT 2141:12-17 (Seid
25  testimony).
       226  Docket No. 162, TT 728: 16-21 (Ms. Korb testimony).
26     227  Docket No. 172, TT 2141:20-25; 2142:19-25 (Seid testimony).
27     228  Docket No. 172, TT 2145:8-2146:14; 2145:16-2146:6 (Seid testimony); Docket No. 236,
    Exhibits DK, DL, DM & DO.
28     229  Docket No. 172, TT 2142:19-22 (Seid testimony).
       230  Docket No. 172, TT 2143:5-15 (Seid testimony).
       231  Docket No. 236, Exhibit DL.
       232  Docket No. 172, TT 2144:4-11 (Seid testimony).

1    of documents,[233] also in short order.  Spicer made no further requests for documents.  He filed no

2    motion to compel.  He made no effort to subpoena third parties to obtain documents, other than

3    Wells Fargo.  He should not be allowed to complain about Sarah's production now, two years

4    after he served his requests for production.

5         In short, there is ample evidence to support the Bankruptcy Court's determination that

6    Sarah and her counsel did not willfully deceive the Court regarding relevant documents in their

7    control.

8    **B.    The Bankruptcy Court Was Not Clearly Erroneous in Finding That the
9         Alteration of Documents by Liquid White-out by Sarah Did Not Prevent
10        Either the Trustee or the Court from Ascertaining What Those Documents
          Said.**

11        Trustee claims that the Bankruptcy Court committed clear error in finding that Sarah's

12   alteration of documents did not prevent either Trustee or the Court from ascertaining what those

13   documents said.  Trustee concedes there was no doubt that Enzo's name was the information

14   removed from some, but not all, of the insurance statements, but Trustee claims that unknown

15   information was removed from other exhibits, including the memo line on checks that Sarah

16   produced.

17        Trustee overlooks Sarah's testimony[234] and that of her attorney, Ms. Seid,[235] to the effect

18   that Sarah had removed her social security number, telephone number and Wells Fargo Bank

19   account number from documents, as well as Sarah's mother's address.  There was no evidence in

20   the case that any other information had been redacted and the Bankruptcy Court simply declined

21   Trustee's invitation to infer that Sarah had deliberately removed any other information from

22   documents she produced.

23   **IV.   The Bankruptcy Court Did Not Abuse its Discretion in Determining that Sarah Did
24        Not Engage in Conduct Utterly Inconsistent with the Orderly Administration of
          Justice.**

25        Trustee also claims that the Bankruptcy Court erred in deciding that Sarah's removal of

26

27   Enzo's name (with "liquid white out") from some, but not all, of the documents she produced was

28

---

233  Docket No. 172, TT 2144:20 - 2142:5 (Seid testimony).
234  Docket No. 166, TT 1562:13 - 1563:11 (Sarah testimony).
235  Docket No. 172, TT 2136:22 - 2137:4 (Seid testimony).

Appellee's Brief                                                    Page 37

1  not conduct utterly inconsistent with the orderly administration of justice.  This was not an abuse

2  of discretion by the Bankruptcy Court.

3        At trial, evidence was presented that Sarah was given permission by her counsel to remove

4  certain personal information from documents produced in the case.   During the course of

5  redacting her private information and copying documents for production, Sarah became upset

6  with Enzo and removed his name (using liquid white out) from some of the insurance premium

7  statements.

8        Elaine Seid testified that in the context of Spicer's subpoenaing Sarah's Wells Fargo bank

9  documents, Sarah had expressed her concern about divulging personal information, such as social

10  security numbers, an unlisted telephone number, her driver's license number, and Sarah's

11  mother's post office box number.[236]  Ms. Seid then negotiated a protective order with Spicer's

12  counsel, which provided for the redaction of Sarah's social security number and driver's license

13  number.[237]

14        At the time, Sarah was also gathering documents responsive to Spicer's document request,

15  and Ms. Seid told Sarah that Sarah could also remove her personal information from the

16  documents Sarah was producing.[238]  Ms. Seid then asserted Sarah's privacy rights in the written

17  response to Spicer's document request, identifying Sarah's post office box number, social security

18  number and telephone number.[239]

19        Sarah testified that when she copied documents for production, she used "white-out" to

20  remove private information, including her social security number, telephone number, and bank

21  account number.[240]  This was done at Kinko's, while Sarah and Enzo and Carla Korb were all

22  working to copy documents for production.  In the course of that process, Sarah saw Enzo's name

23  on insurance premium billing statements (which she had paid), and she became upset with

24  Enzo.[241]  She whited-out Enzo's name from some, but not all, of the insurance statements.[242]  She

25

26  [236]  Docket No. 172, TT 2135:10 - 2136:8 (Seid testimony).
27  [237]  Docket No. 231, Exh. 176; Docket No. 172, TT 2138:9 - 2140:23 (Seid testimony).
    [238]  Docket No. 172, TT 2136:22 - 2137:4 (Seid testimony).
    [239]  Docket No. 172, TT 2137:18 - 2138:7 (Seid testimony); Docket No. 236, Exh. DH, p. 2,
28  lines 9-15.
    [240]  Docket No. 166, TT 1562:13 - 1563:11 (Sarah testimony).
    [241]  Docket No. 166, TT 1562:13 - 1563:11; 1566:7-24; 1566:25 - 1567:6 (Sarah testimony).
    [242]  Docket No. 223, Exh. 88; Docket No. 166, TT 1566:7 - 24 (Sarah testimony).

1  spent approximately ten minutes whiting-out Enzo's name, then the white-out became thick, her

2  anger subsided and she got tired of redacting Enzo's name.[243]  Sarah was not careful about the job

3  of removing Enzo's name from the documents.  Sarah testified that she did not check her copies

4  to see whether the white-out could be seen.[244]

5      At the time, Sarah did not think there was anything wrong in redacting Enzo's name.[245]

6  She realizes now that it was wrong to have redacted Enzo's name and Sarah has apologized to the

7  court.[246]

8      The Bankruptcy Court found that:

9          *"Sarah testified credibly that she altered evidence to protect her and*

10          *the Duchess' private information and also that she whited out Enzo's*

11          *name from some of the insurance documents because she was mad at*

12          *Enzo for getting her involved in this lawsuit. . . There is also no*

13          *evidence that any alteration of documents was to prevent Trustee*

14          *from finding out what that information was."*[247]

14      Based on this evidence, the Bankruptcy Court was well within its discretion in denying

15  terminating or evidentiary sanctions and, instead ordering that Sarah pay a monetary sanction for

16  her conduct.

17  **V.     Trustee's Assertions of Legal Error Are Without Merit.**

18      Trustee 's remaining grounds for appeal are all based on purportedly erroneous legal

19  conclusions reached by the Bankruptcy Court.  As is shown below, one of the purported errors

20  had no effect on the judgment and cannot be the basis for reversal.  Moreover, in all instances, the

21  Bankruptcy Court ruled correctly.

22      **A.     Under California Law, No Gift Presumption Arises on the Facts of This Case.**

23      Existing California case law reflects the traditional view that a rebuttable presumption of a

24  gift arises when a husband's funds are used to purchase property and title is placed in the wife's

25  name, but no gift is presumed if the wife's funds are used for the purchase and the property is

26

27  _____

28  243  Docket No. 166, TT 1567:24 - 1568:16 (Sarah testimony).
    244  Docket No. 166, TT 1567:13-19 (Sarah testimony).
    245  Docket No. 166, TT 1567:10-12 (Sarah testimony).
    246  Docket No. 166, TT 1568:17-20 (Sarah testimony).
    247  C.R., Docket No. 202, Decision, at p. 38.

1  placed in the name of the husband.  This rule is set forth in the Restatement of the Law, Second,

2  Trusts, § 442, entitled, "Purchase in the Name of a Relative," which provides:

3       " Where a transfer of property is made to one person and the

4       purchase price is paid by another and the transferee is a *wife, child or*

        *other natural object of bounty of the person* by whom the purchase

5       price is paid, a resulting trust does not arise unless the latter

6       manifests an intention that the transferee should not have the

7       beneficial interest in the property."

8       The official comment to §442 of the Restatement, Second states clearly that the gift

9  presumption does not arise where the wife provides the funds and title is taken in the name of the

10 husband.[248]  In Restatement of the Law, Third, Trusts, the gift presumption has been "gender-

11 neutralized" so that the presumption of a gift also arises where the wife's funds are used to

12 purchase property in the name of the husband.  This rule has not yet been adopted, nor has

13 Restatement, Third been adopted by any California appellate court.

14      The existing California cases on this point, including a California Supreme Court case,

15 make it clear that the gift presumption does not apply in favor of a husband where the wife

16 provides the funds to purchase the property.[249]  It is only when the husband pays the consideration

17 and title is taken in the wife's name that a gift is presumed.[250]  Moreover, the California Supreme

18

19

20
_____
[248] "The rule stated in this Section is applicable where the payor and transferee
21 respectively are in the relation of husband and wife; father and child; mother and child;
father-in-law and son-in-law; grandparent and grandchild. . . .  It does not apply where the
22 payor and transferee respectively are wife and husband, or child and parent. . . .
       b.      Effect of the rule.  The fact that the transferee is a wife, child or other natural
23 object of bounty of the payor is more than merely a circumstance tending to rebut the inference
of a resulting trust.  It is of itself a circumstance sufficient to raise an inference that a gift was
24 intended, and the burden is upon the payor seeking to enforce a resulting trust to prove that he
did not intend to make a gift to the transferee.  See §443."  Restatement of the Law, Second,
25 Trusts, §442 (1959) [Emphasis added].
[249]  See Socol v. King 36 Cal.2d 342, 348 (1950) ("the presumption of a resulting trust (Civ.
26 Code § 853) arises where title to property is taken in the name of the husband and the
consideration is furnished by the wife (citations)"); McKinnon v. McKinnon 181 Cal.App.2d 97
27 at 104 (1960) ("a trust, and not a gift, arises when title to the property is taken in the name of
husband and the consideration for the transfer is furnished by the wife."); Owings v. Laugharn 53
28 Cal. App. 2d 789, 791 (1942).
[250]  See, Altramano v. Swan 20 Cal.2d 622, 628 (1942).

_____
Appellee's Brief                                                                                    Page 40

1    Court has favorably cited § 442 of the Restatement, Second and the comments thereto, reflecting

2    this traditional rule.[251]

3         **B.    The Bankruptcy Court's Decision Not to Apply the "Gift Presumption"**

4              **Cannot be Reversible Error, Because the Bankruptcy Court Found Evidence**

              **Sufficient to Rebut The Presumption in Any Event.**

5

6         If the Bankruptcy Court was wrong in determining that the gift presumption did not apply

7    in this case, it was not reversible error, because the Court nonetheless required that Sarah prove by

8    clear and convincing evidence that she did not intend to make a gift to Enzo.[252]  In finding that

9    Sarah met that burden, the Court effectively made the same finding that would have been required

10   in order for Sarah to rebut the gift presumption.[253]  Thus, the outcome was in no way affected by

11   the Court's determination not to apply the gift presumption and, therefore, if the Court erred, it

12   was harmless error.

13        **C.    Conveyance of the Pebble Beach Property to the Cecconi Residential Trust**

             **Did Not Terminate the Purchase Money Resulting Trust in Favor of Sarah.**

14

15             **1.    The Fact That the Property Became Subject to an Express Trust in the**

                 **Cecconi Residential Trust Does Not Defeat Sarah's Purchase Money**

16               **Resulting Trust.**

17        Relying on the 1863 California case of *Bayles v Baxter*,[254] Trustee argues that the transfer

18   of the Property in 1998 to the Cecconi Residential Trust extinguished any resulting trust that

19   might have existed at that time.[255]  Trustee cites language in the *Bayles* case to the effect that a

20   resulting trust cannot arise where there is an express trust declared by the parties.  That was not,

21   however, the principle at issue in the case, nor did that rule govern the outcome.  Rather, the issue

22   in *Bayles* was whether the alleged express trust was different from the resulting trust that the law

23   would equitably imply, thereby defeating the resulting trust.  The Supreme Court in *Bayles* upheld

24   the decision imposing a resulting trust because the alleged express trust would have compelled the

25

26   _____

      251   See, eg. Altramano v. Swan, supra at 628.
27    252   C.R., Docket No. 202, Decision, at p. 49 ("[T]o prevail on her claim, Sarah must show by
      clear and convincing evidence that she paid for the Property and that she did not intend to give
28    Enzo a beneficial interest in the Property when his name was placed on title.").
      253   See footnote 248 above.
      254   22 Cal. 575 (1863).
      255   Appellant's Brief, at subsection II.

1   defendant to do the same thing a resulting trust would have compelled (transfer the property to

2   plaintiff upon demand) and, therefore, did not defeat the resulting trust.

3          Following the analysis of *Bayles*, the Bankruptcy Court here found *"[T]here is no evidence*

4   *that Sarah's execution of the Cecconi Residential Trust ' is an agreement to a different trust from*

5   *what would be implied by law."*[256]   The Bankruptcy Court explained that Sarah held full beneficial

6   title to the Property before the transfer to the Cecconi Residential Trust, and that the transfer to

7   the residential trust did not transmute the Property from Sarah's separate property to community

8   property.[257]   Thus, the Property remained Sarah's separate property after the transfer and, to the

9   extent that Enzo held title after the transfer, he did so for Sarah's benefit.

10         Like the express trust in *Bayles*, Sarah and Enzo's intent and understanding of the effect of

11   the Cecconi Residential Trust is consistent with a purchase money resulting trust in favor of Sarah

12   and, therefore, does not defeat the resulting trust.  The Bankruptcy Court found that Sarah's

13   purpose in executing the Cecconi Resulting Trust was to provide Enzo with a place to live during

14   his lifetime, if she predeceased him.  Both Sarah and Enzo understood that Enzo would not own

15   the Property after her death, but that Enzo could live in the Property until he died, at which time

16   the Property would pass to Sarah's niece, Caroline Bassett.  Neither Sarah nor Enzo understood

17   that the Cecconi Residential Trust altered Sarah's sole ownership of the Property.[258]   These factual

18   findings are supported by Sarah's and Enzo's consistent credible testimony.[259]

19          **2.    Transfer of the Property to the Cecconi Residential Trust Merely**

20          **Changed the Form of Title Under Which Enzo Held the Property For**

21          **Sarah's Benefit and, Therefore, Did Not Terminate the Purchase**

            **Money Resulting Trust.**

22          Trustee also cites the case of *Lowenthal v Kunz*,[260] for the proposition that the transfer to

23   the Cecconi Residential Trust was a transfer by Enzo at Sarah's direction and, therefore,

24   terminated the resulting trust.[261]   The Bankruptcy Court addressed this argument in its Decision

25

26   [256]   C.R., Docket No. 202, Decision, at pp. 70-71.
     [257]   C.R., Docket No. 202, Decision, at p. 71.
27   [258]   C.R., Docket No. 202, Decision, at pp. 30.
     [259]   Docket No. 159, TT 301:8-302:7; 302:9-14; 302:24-303:14; 303:19-304:11 (Enzo
28   testimony); Docket No. 167, TT 1686:11-16; 1686:22-24; 1687:12-22; 1785:1-1786:6; 1789:11-
     24 (Sarah testimony).
     [260]   104 Cal.App.2d 181 (1951).
     [261]   Appellant's Brief, at subsection II.B., pp. 36-37.

1  and distinguished *Lowenthal* on the basis of the clear and convincing evidence that Sarah did not

2  intend to relinquish her sole beneficial ownership in executing the Residential Trust.

3         In *Lowenthal*, decedent and defendant, who were business partners, acquired property as

4  tenants in common in 1924 and resided in the property together.  In 1932, decedent conveyed her

5  interest in the property to defendant with the oral agreement that defendant hold the property in

6  trust for decedent.  In 1943, decedent requested that defendant execute a joint tenancy deed to the

7  property with a right of survivorship.  There is no indication that the record in the *Lowenthal* case

8  included any evidence of decedent's intent in requesting the joint tenancy deed.  The court there

9  found that the decedent terminated the oral trust agreement by requesting that the trustor execute a

10 joint tenancy deed.  The court based its decision on the principle that *"A right in property which*

11 *arises by an oral agreement may be released by an oral agreement, or its equivalent, as by an*

12 *oral request to convey or release."*[262]

13        The court in *Lowenthal* apparently had no evidence before it regarding decedent's intent in

14 requesting the joint tenancy deed.  The court thus treated the decedent's request as a request to

15 release the oral trust and alter the ownership of the property to that of joint ownership with right

16 of survivorship.

17        As the Bankruptcy Court noted in rejecting Trustee's argument based on *Lowenthal,* the

18 transfer of the Property to the Cecconi Residential Trust did not transmute the Property from

19 separate property to community property.  Also, the evidence was clear and convincing that Sarah

20 did not intend to gift or otherwise grant Enzo a beneficial interest in the Property when she

21 executed the Cecconi Residential Trust.  The Residential Trust was executed as an estate planning

22 device and, while it changed the form of legal title held by Enzo, he held title for Sarah's benefit

23 both before and after the transfer because there was no intent by Sarah to release her sole

24 beneficial interest.

25        It is also significant that the *Lowenthal* case involved an express oral trust and not a

26 purchase money resulting trust.  The decedent in *Lowenthal*  transferred her one-half interest in

27 the property to defendant with an express oral agreement that he hold title in trust for decedent.

28 The court was justified in concluding that, by later requesting that defendant execute a joint

---

[262]  Lowenthal, 104 Cal.App.2d at 184.

tenancy deed, and without evidence of a contrary intent, decedent was consciously abandoning the oral trust in favor of ownership as joint tenants with right of survivorship.

Rather than the express oral trust asserted in *Lowenthal,* Sarah sought to impose a purchase money resulting trust based on the fact that Sarah paid for the Property and did not intend to gift Enzo an interest in it.  Sarah never asserted an express agreement with Enzo whereby the parties consciously agreed that Enzo would hold legal title in trust for Sarah's benefit.  Consequently, Sarah's request that Enzo transfer title to the Cecconi Residential Trust for estate planning purposes should not affect her claim for a resulting trust, unless there is evidence that Sarah intended by such transfer to gift Enzo an interest in the Property.  The Bankruptcy Court found by clear and convincing evidence that she did not.

> **D.    Conveyance of the Property to Sarah's Living Trust, or to the Cecconi Residential Trust Did Not Ratify the Property as Community Property or Transmute the Property From Separate Property to Community Property**.

> **1.    The Trust Transfers Could Not Ratify the Property as Community Property.**

Trustee asserts that the Property's character as community property was "ratified" by the transfer of the Property to Sarah's living trust (in 1994) and to the Cecconi Residential Trust (in 1998).  The legal principle of "ratification" does not apply in this circumstance, since ratification refers to the adoption or approval of one person's actions by another.[263]  Trustee made this argument in the trial court and it was rejected without comment.[264]  Indeed, Trustee fails to cite any case analyzing facts similar to ours under the principle of ratification.[265]

In his "ratification argument," what Trustee actually argues is that Sarah and Enzo are presumed to have known and understood the contents of documents they signed stating that the Property was held in community property and are therefore presumed to have intended that the Property actually be community property.  The legal authority Trustee cites, however, confirms

---

[263]  See, Snook v Page, 29 Cal.App. 246, 250 (1915) (defining "ratification" essentially as the act of giving sanction and validity to something done by another).

[264]  C.R., Docket No. 178, Post-Trial Brief of Adversary Defendant, A.C. Spicer, at pp. 28-29; C.R., Docket No. 200, Supplemental Post-Trial Brief of A.C. Spicer, at pp. 20-21.

[265]  Trustee has waived this argument by failing to cite any pertinent legal authority.  In re Maurice, 21 F.3d 767, 774-75 (7th Cir. 1994) (court has no duty to research and construct legal arguments for appellant).

that the question of whether property is community property or separate property of one spouse only begins with the form of title.  And while the form of title does create a presumption that beneficial ownership corresponds to title, that presumption may be rebutted by sufficient evidence that the parties intended otherwise.

Trustee cites *Gudelj v Gudelj*[266] for the proposition that a grantor's failure to comprehend the legal effect of a deed does not affect its validity.  Trustee then argues that Sarah is bound by the effect of the trust transfers, whether or not she understood the legal effect of those transfers and *without consideration of what her actual intent may have been.*  However, the California Supreme Court in *Gudelj* – in the very language quoted by Trustee – held otherwise.  In *Gudelj,* the Court reaffirmed that the presumption of ownership arising from the state of title can be rebutted by proof of a contrary intent:

> "It is of no significance that [husband] was unaware of the legal effect of the deed.  Nor is it material that the home was purchased primarily from [husband's ] separate funds, [wife] being aware of their source.  **All of these facts, taken together, provide no basis for an inference of a mutual understanding or agreement between [husband] and [wife] that the separate and community nature of the funds used in the purchase was to be preserved.  Therefore, there being no substantial evidence tending to rebut the presumption created by the joint tenancy deed, the property is owned by the parties in joint tenancy.**"[267]

Here, unlike in *Gudelj,* the court found by clear and convincing evidence a mutual understanding between Sarah and Enzo that the Property remained Sarah's separate property despite the transfers of the Property to her living trust and to the Cecconi Residential Trust.  Under *Gudelj* (and under Cal. Evid. Code § 662), Sarah successfully rebutted any presumption of joint ownership arising from the state of legal title.

---

[266] 41 Cal.2d 202 (1953).
[267] Gudelj v Gudelj, 41 Cal.2d at 213-14.

1

2

    **2.**    **The Trust Transfers Did Not Transmute the Property From Sarah's Separate Property to Community Property.**

3

    Trustee argues that the character of the Pebble Beach Property was transmuted from

4 Sarah's separate property to community property when the Property was transferred to the

5 Cecconi Residential Trust. Applying the bright-line test adopted by the California Supreme Court

6 in *In re MacDonald,*[268] the Bankruptcy Court determined that no transmutation occurred here.

7 The Bankruptcy Court interpreted *MacDonald* to require *"an express declaration that contains*

8 *language which expressly states that the characterization or ownership of the property is being*

9 *changed"*[269] in order for there to be a transmutation. The Bankruptcy Court found that the

10 Cecconi Residential Trust contained no such express declaration. The Court was correct in both

11 its interpretation of California law and its application of that law to the facts of this case. Neither

12 the Cecconi Residential Trust, nor the deed transferring the Property to that trust, contains

13 language that satisfies the transmutation test articulated in *MacDonald.*

14

    **E.**    **Sarah's Refinancing of the Property with a Mortgage on Which She and Enzo Were Jointly Liable Did Not Extinguish the Resulting Trust.**

15

16

    Trustee argues that Enzo's assumption of a joint financial obligation as co-borrower on a

17 mortgage of the Property with Sarah extinguished Sarah's resulting trust. Trustee argues that the

18 mortgage repaid Sarah's purchase money and substituted her separate property collateral with a

19 joint obligation secured by community property.[270] The one case cited by Trustee to support this

20 argument, *Gudelj v Gudelj,*[271] compels the opposite conclusion.

21

    *Gudelj* is not a resulting trust case, nor does it begin to address the circumstances under

22 which a financing of property subject to a resulting trust may terminate the resulting trust.

23 However, what the California Supreme Court *did* state in in *Gudelj* is that *"[F]unds procured by*

24 *the hypothecation of separate property of a spouse are separate property of that spouse . . . The*

25 *proceeds of a loan made on the credit of separate property are governed by the same rule."*[272]

26 Referring to this language, the Bankruptcy Court determined that the refinance did not terminate

27

28

---

268  51 Cal.3d 262 (1990).
269  C.R., Docket No. 202, Decision, at p. 78.
270  Appellant's Brief, at subsection IV., p. 42, lines 9-12.
271  41 Cal.2d 202 (1953).
272  Gudelj, 41 Cal.2d at 210.

1   Sarah's resulting trust because the joint mortgage was obtained on Sarah's credit alone.

2   Moreover, Sarah repaid the mortgage with her separate property.[273]   This result is consistent with

3   *Gudelj,* as well as the case of *Novak v Novak,*[274] cited by Sarah in her post-trial briefing.

4   **CONCLUSION**

5   　　　The Bankruptcy Court heard evidence over fifteen days of trial, and reviewed

6   approximately 300 exhibits.   The parties filed more than 300 pages of trial and post-trial briefing.

7   The Bankruptcy Court issued an exhaustive, 85 page Memorandum Decision After Trial.   The

8   evidence supporting the judgment is overwhelming.   There may never be another case where a

9   married couple is able to so convincingly prove that they maintained separate financial lives and

10  intended for the property of each respective spouse to remain separate property.   The judgment

11  below is thus correct, either under resulting trust theory, or on the basis of clear and convincing

12  evidence of Sarah's actual sole beneficial ownership, sufficient to overcome the presumption of

13  joint-ownership based on title.

14

15  Dated: October 10, 2007                         McPHARLIN SPRINKLES & THOMAS LLP

16

17                                                                _____/s/ Paul S. Avilla_____

18                                                                PAUL S. AVILLA
                                                                  Attorneys for plaintiff SARAH CECCONI
19

20

21

22

23

24

25

26

27

28

---

[273]  C.R., Docket No. 202, Decision, at p. 69.
[274]  249 Cal.App.2d 438 (1967).