SHARTSIS FRIESE LLP
MARY JO SHARTSIS (Bar #55194)
AMY L. HESPENHEIDE (Bar #200930)
One Maritime Plaza, 18th Floor
San Francisco, California  94111-3598
Telephone:  (415) 421-6500
Facsimile:  (415) 421-2922
Emails:  mjshartsis@sflaw.com
         ahespenheide@sflaw.com

Attorneys for Appellant
A. C. SPICER, TRUSTEE IN BANKRUPTCY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br><br>GIUSEPPE ENZO CECCONI,<br><br>　　　　　　Debtor. | Case No. 5:07-cv-03636-JW<br><br>**APPELLANT'S REPLY BRIEF**<br><br>**The Honorable James Ware** |
| SARAH CECCONI,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>GIUSEPPE ENZO CECCONI and A. C.<br>SPICER, TRUSTEE IN BANKRUPTCY,<br><br>　　　　　　Defendants. | |
| A.C. SPICER, TRUSTEE IN<br>BANKRUPTCY,<br><br>　　　　　　Appellant,<br><br>　　v.<br><br>SARAH CECCONI,<br><br>　　　　　　Appellee. | |

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................3

I.  THE CREATION OF THE CECCONI RESIDENTIAL TRUST AND THE CONVEYANCE OF THE PROPERTY TO THE RESIDENTIAL TRUST TERMINATED ANY PREEXISTING RESULTING TRUST..............3

    A.  A Resulting Trust And An Express Trust Cannot Exist At The Same Time Over The Same Property ...........................................3

        1.  *Bayles* Precludes A Resulting Trust.............................................3

        2.  The Purpose Of The Residential Trust Is Clearly Stated In Writing ...............................................................................5

    B.  The Transfer Of The Property To Sarah And Enzo As Co-Trustees Pursuant To The Provisions Of The Residential Trust At Sarah's Direction Terminated Any Possible Resulting Trust For Her Benefit ........6

    C.  By Creating The Residential Trust, Sarah Ratified Enzo's Community Property Interest................................................7

    D.  Any Separate Property Interest Was Transmuted By The Express Declaration That The Property "Is Community Property." .....................9

II.  SARAH'S CONVEYANCE OF HER COMMUNITY PROPERTY INTEREST TO HER LIVING TRUST ON THE ADVICE OF COUNSEL RATIFIED ITS COMMUNITY PROPERTY CHARACTER ...........................10

III.  SARAH'S PURCHASE MONEY FOR THE PROPERTY WAS REIMBURSED IN 1990, EXTINGUISHING ANY PRIOR RESULTING TRUST .........................................................................10

IV.  THE BANKRUPTCY COURT'S FINDINGS DO NOT SUPPORT SARAH'S NEW LEGAL THEORY, AND THE BANKRUPTCY COURT'S DECISION THAT THE GIFT PRESUMPTION DOES NOT APPLY IS CLEAR ERROR ....................................................11

V.  THE BANKRUPTCY COURT'S FINDINGS AND CONCLUSION THAT SARAH ESTABLISHED A RESULTING TRUST BY CLEAR AND CONVINCING EVIDENCE IS CLEARLY ERRONEOUS ....................12

    A.  The Bankruptcy Court's Findings And Conclusion That Sarah Did Not Intend To Give Enzo A Beneficial Interest Directly Contradicts Contemporaneous Documents and Other Objective Evidence ................13

    B.  The Bankruptcy Court's Finding That Sarah Paid For The Property And All Improvements With Her Separate Funds Is Contradicted By Contemporaneous Documentary And Other Objective Evidence That The Bankruptcy Court Erroneously Disregarded.............................15

        1.  The Bankruptcy Court Erred In Disregarding Enzo's Contradictory Testimony Regarding The $300,000 Loan And Other Funds Wired To Sarah's Bank Account ....................15

        2.  The Contemporaneous Business Records Of The Royal Bank Contradict Enzo's Testimony ............................................17

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

**TABLE OF CONTENTS**
(continued)

Page

C.    The Bankruptcy Court's Repetitive References To Enzo's And Sarah's Testimony As "Credible" And As "Clear And Convincing" Do Not Insulate These Findings From Review On Appeal ...................... 19

VI.   THE BANKRUPTCY COURT'S DECISION NOT TO AWARD TERMINATING OR ADVERSE INFERENCE SANCTIONS IS CLEARLY ERRONEOUS ................................................................................ 20

A.    Trustee's Appeal of The Decision and Judgment Denying Terminating and Adverse Inference Sanctions Is Properly Before This Court .................................................................................... 20

B.    The Bankruptcy Court's Findings Regarding Sarah's Document Production Are Clearly Erroneous ........................................ 21

C.    The Bankruptcy Court Clearly Erred In Finding That Sarah's Application Of Liquid White-Out To Various Documents Did Not Justify Terminating Or Adverse Inference Sanctions .............................. 23

CONCLUSION ................................................................................................ 25

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. City of Bessemer City,*
470 U.S. 564 (1985) ...................................................................................................... 13, 20

*Bainbridge v. Stover,*
16 Cal. 2d 423 (1940) ............................................................................................................ 4

*Bayles v. Baxter,*
22 Cal. 575 (1863) ........................................................................................................ 3, 4, 5

*G.R. Holcomb Estate Co. v. Burke,*
4 Cal. 2d 289 (1935) ........................................................................................................... 12

*Gudelj v. Gudelj,*
41 Cal. 2d 202 (1953) .................................................................................................. 9, 10, 11

*In Re Estate of MacDonald,*
51 Cal.3d 262 (1990) ............................................................................................................ 9

*In Re Freitas,*
16 F. Supp. 557 (S.D. Cal. 1936) ....................................................................................... 12

*In re Frontier Properties, Inc.,*
979 F.2d 1358 (9th Cir. 1992) ............................................................................................ 21

*In re Maurice,*
21 F.3d 767 (7th Cir. 1994) .................................................................................................. 7

*In re Moody,*
817 F.2d 365 (5th Cir. 1987) .............................................................................................. 21

*In re Sierra Fin. Svcs., Inc.,*
290 B.R. 718 (9th Cir. B.A.P. 2002) .................................................................................. 21

*Link v. Wabash R.. Co.,*
370 U.S. 626 (1962) ............................................................................................................ 24

*Lowenthal v. Kunz,*
104 Cal. App. 2d 181 (1951) ...................................................................................... 6, 7, 13

*Novak v. Novak,*
249 Cal. App. 2d 438 (1967) .............................................................................................. 11

*United States v. United States Gypsum Co.,*
333 U.S. 364 (1948) ............................................................................................................ 13

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

# TABLE OF AUTHORITIES
### (continued)

Page(s)

## Statutes and Codes

28 United States Code
§ 158(a)(1) ...............................................................................................................21

California Evidence Code
§ 662 ........................................................................................................... 11, 12, 13

California Family Code ...............................................................................................9, 10
§ 1100 ..................................................................................................................4, 6, 9
§ 1102 ..................................................................................................................4, 6, 9
§ 1102(a) ...................................................................................................................10
§ 761 .......................................................................................................................4, 6
§ 852(a) .......................................................................................................................9
§ 910 .........................................................................................................................15

California Probate Code
§ 100 ........................................................................................................................4, 6

## Rules

Federal Rules of Bankruptcy Procedure
Rule 8001 ................................................................................................................21

## Other Authorities

Restatement (Second) Trusts,
§ 410(b) .......................................................................................................................7

W. Fratcher, *Scott on Trusts*,
§ 410 (4th ed. 1989) ....................................................................................................7

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9    4111

**INTRODUCTION**

Appellee Sarah Cecconi ("Sarah" or "Mrs. Cecconi") has given no plausible or coherent reason in Appellee's Brief or in her testimony for voluntarily and intentionally taking title to the Pebble Beach Property (the "Property") as community property if she intended it to be her separate property.  In fact, Sarah fails to respond to the pivotal and unanswered questions in this case:  What estate planning or tax purpose did Sarah intend to achieve if she did not intend her husband to have a beneficial interest in the Property, and why has she retained and confirmed community property ownership for over 20 years?  Sarah can't answer these questions because she did intend to own the Property as community property for the estate and tax benefits.  Sarah's testimony and actions leave no room for doubt that the only reason she asked her husband for the first time in 2001 to transfer his interest in the Property to her by a deed she has never recorded was to avoid the claims of her husband's creditors.  Title to the Property remains as community property, and that unrecorded deed will undoubtedly be torn up if the Judgment is affirmed.

To avoid the legal consequences of her actions, Sarah relies on her testimony that she didn't pay much attention to legal or financial matters or to the documents she signed because, as the Bankruptcy Court found, "she didn't have to."  She had her businessman father, her lawyers and her financial advisers to do that for her.  Contrary to the Bankruptcy Court's conclusion, however, the rule of law that you are deemed to have read and understood a document you signed applies to everyone—even the very wealthy and privileged who rely on expert advisers.

While Sarah does not dispute that she signed numerous documents reflecting her knowledge and intent that her husband, Giuseppe Enzo Cecconi ("Enzo" or "Mr. Cecconi"), have a community property interest in the Property, Sarah testified that these documents "didn't mean anything" to her.  The contemporaneous documentary evidence overwhelmingly shows that from the time Sarah received her substantial inheritance in 1979, she has managed her financial affairs to avoid or minimize taxes and has relied on legal and other experts for tax and estate planning advice for almost 30 years to accomplish those goals.  All of the actions Sarah now tries to avoid were taken with the advice of legal counsel to obtain these benefits.

Sarah did not prove a resulting trust because her intent that Enzo have a beneficial interest

is established by her own testimony and her own actions, and there is no evidence of an agreement or understanding regarding the Property or any possible reason for taking title to the Property as community property if she intended it to be her separate property. Sarah previously took title to a Townhouse in Pebble Beach as separate property and then deliberately conveyed it by grant deed to herself and Enzo as community property. Sarah acknowledges that she cannot explain why she took title either to the Townhouse or to the Property as community property if she intended it to be her separate property. Because Sarah will not admit the obvious, her Appellee's Brief characterizes her actions as "inexplicable." Her actions are not inexplicable, however, because her actions tell the story. Appellee's Brief does not dispute that unless Enzo had a beneficial interest in the Property, Sarah could not obtain any estate planning or tax benefits by community property ownership, and her intent was to obtain those benefits.

Sarah now argues in her Appellee's Brief that if she failed to establish a resulting trust, the Bankruptcy's Court's Judgment should be affirmed on another legal theory—that the Bankruptcy Court's findings show that she rebutted the presumption of ownership stemming from the community property deed. However, the Bankruptcy Court's findings and conclusions are based solely on the existence of a resulting trust; if Sarah failed to establish a resulting trust, she did not rebut the deed presumption. In addition, Appellant A. C. Spicer, Trustee of Enzo's bankruptcy proceedings in England ("Trustee"), has shown that even assuming a resulting trust arose in 1985, it was extinguished as a matter of law by the creation of the Cecconi Residential Trust in 1998 and by Sarah's and Enzo's other actions taken with the advice of her counsel. Trustee has also shown that the testimony of Sarah and Enzo regarding Sarah's purported intent in 1985 to have separate property ownership is internally inconsistent and implausible, is contradicted by contemporaneous and objective evidence and is insufficient to uphold the Judgment.

Finally, while Appellee's Brief attempts to minimize the significance of Sarah's deliberate deletion of Enzo's name and other information from numerous documents and her failure to conduct a reasonable search for documents, Sarah's conduct warrants terminating or adverse inference sanctions, and the denial of such sanctions was clear error in light of the undisputed evidence of Sarah's willful spoliation of evidence and disregard for her discovery obligations.

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

**ARGUMENT**

**I.    THE CREATION OF THE CECCONI RESIDENTIAL TRUST AND THE CONVEYANCE OF THE PROPERTY TO THE RESIDENTIAL TRUST TERMINATED ANY PREEXISTING RESULTING TRUST.**

Appellant's Brief demonstrates that the Cecconi Residential Trust ("Residential Trust"), an express trust, terminated or extinguished as a matter of law any purported resulting trust because:  (1) a resulting trust and an express trust cannot co-exist as to the same property; (2) the transfer of the Property to the Residential Trust at Sarah's direction terminated any resulting trust; (3) the execution of the Residential Trust agreement constitutes a ratification by both Sarah and Enzo of their community property interest; and (4) even if the Property was Sarah's separate property prior to the creation of the Residential Trust, the written agreement and deed conveying the property to Sarah and Enzo as trustees transmuted any separate property interest to community property.  *See* Appellant's Brief at 34-41.  While Sarah attempts to distinguish the authority on which Trustee relies, she fails to do so and fails to cite any contrary authority.

**A.    A Resulting Trust And An Express Trust Cannot Exist At The Same Time Over The Same Property.**

Sarah argues that the principal case on which Trustee relies, *Bayles v. Baxter*, 22 Cal. 575 (1863), does not support Trustee because "the alleged express trust would have compelled the defendant to do the same thing a resulting trust would have compelled (transfer the property to the plaintiff upon demand) and, therefore, did not defeat the resulting trust."  Appellee's Brief at 41-42.  Sarah argues that the resulting trust and the subsequently created Residential Trust are one and the same trust.  Sarah misconstrues *Bayles,* and there is no factual support for the Bankruptcy Court's finding that the resulting trust and the express trust are the same.

**1.    *Bayles* Precludes A Resulting Trust.**

*Bayles* involved an alleged trust over an interest in land which defendant purchased with funds provided by the plaintiff based on an oral agreement that defendant would convey the land to plaintiff on demand.  While there was an express oral agreement, there was no express trust because an express trust cannot be established by an oral agreement.  *Id.* at 578-579.  Defendant later refused to convey the property to the plaintiff, and the court found that while the oral

agreement did not establish an express trust, it did establish a resulting trust. *Id*. In reaching its conclusion, the Supreme Court in *Bayles* relied on the principle that a resulting trust "cannot . . . arise where there is an express trust declared by the parties and evidenced by a written declaration of such express trust." *Id*. at 579-80. Under *Bayles*, an express trust and a resulting trust cannot co-exist. The sole term of the oral agreement in *Bayles* was that the defendant would convey the property to plaintiff, who provided the purchase money. That is the only duty imposed on a trustee of a resulting trust, as *Bayles* held. *Id*. at 579.

Misconstruing its holding and misapplying the facts in *Bayles*, Sarah argues that the Bankruptcy Court's finding that "there is no evidence that Sarah's execution of the Cecconi Residential Trust 'is an agreement to a different trust from what would be implied by law'" means that the alleged resulting trust and the express Residential Trust can co-exist and are identical. Memorandum Decision After Trial (hereafter "Decision") at 70-71; Clerk's Record, Docket No. 202[1]; Appellee's Brief at 41-42. Sarah relies on the finding that the Residential Trust (Exh. BD) and the resulting trust are, as in *Bayles*, not different "agreements." As a matter of both fact and law, however, they are different.

The only duty imposed by a resulting trust is that trustee must convey the property to the person who paid for it (the beneficiary) on demand. *See Bainbridge v. Stover*, 16 Cal. 2d 423, 427 (1940). The Residential Trust establishes *no such duty*. On the contrary, Enzo as a settlor of the Residential Trust not only has no duty to convey his interest to Sarah, but each settlor has a right separately to dispose of his/her community property interest as he/she sees fit under California's community property laws. *See Cal. Fam. Code, §§ 761, 1100 and 1102 ; Cal. Prob. Code § 100.*[2] In addition, the detailed fifteen-page Residential Trust agreement imposes numerous duties and obligations on the "Trustees" and grants them numerous powers over the

---

[1]       The Clerk's Record is cited by docket number, "CR _____," and includes the Trial Exhibits and Trial Transcript. All citations in Appellant's Brief and Reply Brief to Trial Exhibits are by Trial Exhibit number ("Exh. _____") and to the Trial Transcript by page number ("TT _____"). A cross-reference index to the electronic record and paper record for Trial Exhibits and the Trial Transcript is attached hereto as Appendix A. Trial Exhibits are at CR 215-236. The Trial Transcript is at CR 158-173 and 195. The Bankruptcy Court's Decision is at CR 202 and is referred to throughout solely as "Decision" or "MD."

[2]       Sections of the California Codes cited by Appellant are provided in Appendix B.

Shartsis Friese llp
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1  Residential Trust property that are inconsistent with a resulting trust. *See, e.g.*, Exh. BD at 7-10,

2  Article V (Powers), § 5.01 (listing the powers granted) and §7.03 (acceptance of trust by Trustees

3  under California law). Thus, the Residential Trust as a matter of law is a different trust than

4  could be implied by the law of resulting trusts, and the two cannot co-exist, as the California

5  Supreme Court held in *Bayles*. If a resulting trust arose in 1985, it was terminated in or before

6  1998.

7  **2.    The Purpose Of The Residential Trust Is Clearly Stated In Writing.**

8  Sarah argues that the Bankruptcy Court's finding regarding the purpose of the Residential

9  Trust "is consistent with a purchase money resulting trust . . . and does not defeat the resulting

10  trust." The Bankruptcy Court found Sarah's purpose to be as follows:

11  > Sarah's purpose in executing the Cecconi Residential Trust was to provide Enzo
   > with a place to live during his lifetime, if she predeceased him. Both Sarah and
12  > Enzo understood that Enzo would not own the property after her death, but that
   > Enzo would live in the property until he died, at which time the property would
13  > pass to Sarah's niece, Caroline Bassett. Neither Sarah nor Enzo understood that
   > the Cecconi Residential Trust altered Sarah's sole ownership of the property.
14

15  Appellee's Brief at 42:12-17; *see* Decision at 29:27-30:9. This "finding" is irreconcilable with

16  the unambiguous terms of the written agreement. Sarah testified that she didn't read or

17  understand the Residential Trust agreement when she signed it on the advice of her attorney.

18  TT 1789:25-1790:5. Sarah does not contest that her oral testimony of a different intent or

19  understanding is not admissible to contradict her intent as clearly expressed in writing. *See*

20  Appellant's Brief at 35-36; Appellee's Brief at 41-44. The Bankruptcy Court's finding as to her

21  purpose is clearly erroneous for this and several additional reasons.

22  First, Sarah unequivocally testified that the Residential Trust was created for tax purposes,

23  specifically to avoid the "huge," "tremendous" or "astronomical" taxes Enzo would have to pay if

24  he had to sell the Property. TT 1682:21-1683:22; 1685:17-1686:3; 1686:14-16; 1790:8-16 and

25  1910:7-17. Sarah testified: "Well if [Enzo] sold it, the tax, [Mr. Hawley, the estate lawyer] told

26  me would be tremendous." TT 1790:12-13. Enzo confirmed that Sarah "wanted to make certain

27  that the property of the Trust would go to me upon her death without a tax burden." Exh. BN

28  at 7; TT 1062:9-1063:6. This testimony is contrary to the Bankruptcy Court's finding that Enzo

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    would not own and could not sell the Property but would have only a life estate.

2         Second, the Residential Trust says nothing about a life estate for Enzo or the Property's

3    passing to Sarah's niece, who is not mentioned in the agreement. Exh. BD. Any "understanding"

4    that Sarah's "sole ownership" was "unaltered" by the Residential Trust is directly contradicted by

5    the clear terms of the written agreement. What was "unaltered" was her community property

6    ownership. If, as Sarah testified, "[Enzo] could get rid of the house if he wanted to"

7    (TT 1789:20-24), she could not have understood or intended to provide only a life estate.

8         Third, the Residential Trust expressly declares the property to be "community property."

9    Only Sarah's own community property interest is subject to her testamentary disposition, not

10   Enzo's separate community property interest. Cal. Prob. Code § 100; Cal. Fam. Code §§ 1100,

11   1102. Sarah and Enzo are joint trustees, each with full and equal powers to manage and sell the

12   Property, and each has a right to withdraw his or her own community property interest from the

13   Trust. Exh. BD at 2 (Art. 1, § 1.01) and 14 (Art. II, § 2.06); Cal. Fam. Code §§ 761, 1100, 1102.

14   Neither Sarah nor Enzo could have had the understanding described by the Bankruptcy Court if

15   they had listened to their attorney or had read the agreement, or even the first page. The

16   Residential Trust is, as a matter of fact and law, a different trust than an implied resulting trust,

17   and its purpose is entirely contrary to the inadmissible parol evidence on which the Bankruptcy

18   Court based its erroneous factual findings and legal conclusions.

19   **B.    The Transfer Of The Property To Sarah And Enzo As Co-Trustees Pursuant
             To The Provisions Of The Residential Trust At Sarah's Direction Terminated
20           Any Possible Resulting Trust For Her Benefit.**

21        Trustee relied in part on *Lowenthal v. Kunz*, 104 Cal. App. 2d 181, 184 (1951), to support

22   his position that the conveyance of property at the request of the beneficiary of a resulting trust

23   terminates the trust. In *Lowenthal*, the beneficiary of a resulting trust directed the trustee to

24   execute a joint tenancy deed placing title in both the beneficiary's and trustee's names, as joint

25   tenants. The court held that when the trustee did so at the beneficiary's direction, the resulting

26   trust terminated. *See* Appellant's Brief at 36-37. Sarah argues that *Lowenthal* is distinguishable

27   because it did not discuss "decedent's intent in requesting the joint tenancy deed." Appellee's

28   Brief at 43:7-8. Yet Sarah fails to explain why intent was or is relevant.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9   4111

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

1       *Lowenthal* did not discuss "intent" because what was relevant was the direction given by

2  the beneficiary to the trustee of the resulting trust and acted upon by the trustee by putting title to

3  the property in their names as joint tenants.  The leading treatises on trusts confirm the rule stated

4  in *Lowenthal* that a resulting trust terminates when the beneficiary (here, Sarah, if a resulting trust

5  existed) directs the trustee to place title in the beneficiary's name or in the name of another.  The

6  treatises do not discuss intent because the only question is whether the beneficiary directed the

7  action taken by the trustee.  *See* Restatement (Second) Trusts, § 410(b); W. Fratcher, *Scott on*

8  *Trusts*, § 410 (4th ed. 1989).

9       Sarah's intent in creating the Residential Trust is reflected both in the express terms of the

10  written agreement itself and by her testimony that her purpose and intent was to avoid taxes.

11  Sarah admits in her Appellee's Brief that she has "never asserted an express agreement with Enzo

12  whereby the parties consciously agreed that Enzo would hold legal title in trust for Sarah's

13  benefit."  Appellee's Brief at 44:5-6.  The conclusion Sarah draws from this admission—that the

14  transfer to the express trust "should not affect her claim for a resulting trust"—doesn't follow and

15  is not supported by *Lowenthal* or any other authority.  *Id*. at 44:8-9.  Moreover, the terms of the

16  agreement and Sarah's testimony that she created the Residential Trust to avoid taxes are clear

17  and convincing evidence that Sarah intended Enzo to have a beneficial interest and to make a gift

18  of a community property interest; otherwise she could not protect him from "tremendous" taxes.

19

20      **C.**    **By Creating The Residential Trust, Sarah Ratified Enzo's Community**
                **Property Interest.**

21       Appellee's Brief does not respond substantively to Trustee's argument concerning the

22  transfer of Sarah's community property interest to the Residential Trust or to her Living Trust as

23  an acknowledgement or ratification of its community property character.  Rather, Sarah argues

24  that ratification doesn't apply and that "this argument . . . was rejected without comment [by the

25  Bankruptcy Court]."  Appellee's Brief at 44:18-19.  Sarah also asserts without basis that the

26  argument was waived[3] by Trustee's failure to cite any authority.  To the contrary, Trustee cited

27         [3]     Sarah cites *In re Maurice*, 21 F.3d 767, 774-75 (7th Cir. 1994), to support her

28  waiver argument.  The court in that case did not discuss or find a waiver, but dismissed a party's
arguments as "too hypertechnical and wholly groundless to justify discussion."  *Id*. at 775.

1  numerous authorities to support ratification in Appellant's Brief at pp. 33-34 and 38-39.

2      Ratification is an issue because Sarah testified at trial and argued in her post-trial briefs

3  that she somehow did not know who directed title to be taken as community property when the

4  Property was purchased in 1985.  TT 1740:3-15 and CR 174 at 15.  However, the undisputed

5  evidence that she signed a deed conveying the Pebble Beach Townhouse from separate to

6  community property is compelling evidence that she directed title to be taken to the Pebble Beach

7  Property as community property when she acquired it the following year.

8      The Bankruptcy Court made no direct factual finding as to whether Sarah or her father

9  directed how title was taken even though the evidence showed that both Sarah and Enzo had

10 stated under oath in 2001 that *Sarah placed title* in their names as community property for estate

11 planning purposes.  *See* Exhs. BK and BL.  Side-stepping the issue, the Bankruptcy Court

12 concluded that "the intent of Sarah's agents is irrelevant to a purchase money resulting trust

13 analysis because there is no evidence that Sarah authorized her [unidentified] agents to make a

14 gift of one-half of her interest in the Property to Enzo" (Decision at 60:24-61:1) and that "there is

15 no evidence that Mr. Coleman [her father] had any authority to make such a gift." *Id.* at 60:1-5.

16     However, Trustee did not rely on the intent of Sarah's father or any other agent but on her

17 own intent as reflected in the documentary evidence.  The evidence established that Sarah

18 personally placed title in their joint names and knew the Property was held as community

19 property, as did her businessman father, George Coleman ("Mr. Coleman"), whom she

20 "unconditionally trusted" (until his death in 1997) to make most decisions for her.  Decision

21 at 11:13-19, 12:2.  There was no evidence that Mr. Coleman exceeded the broad authority Sarah

22 gave him.  The Bankruptcy Court's erroneous focus on the intent of her father or agents overlooks

23 the fact that Sarah herself—not her agents or father—signed the key documents acknowledging

24 Enzo's community property ownership and swore under penalty of perjury that she placed title in

25 both names as community property.  Exhs. AQ, BA, BC and BK ¶ 6.  Sarah is deemed as a matter

26 of law to have had knowledge of how title was taken, and Sarah's testimony shows she had *actual*

27 *knowledge* that she and Enzo owned the Property as community property.  *See* Appellant's Brief

28 at 33-34 and 38-39.  Over the subsequent 20 years up to the conclusion of trial in May 2005, and

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    even to this day, Sarah *never* corrected or changed record title from community property to

2    separate property despite that knowledge, TT 1637:9-12, and has therefore ratified the acts of her

3    father or other agents—if she did not directly take title as community property.

4          Finally, Sarah argues that *Gudelj v. Gudelj*, 41 Cal. 2d 202, 210 (1953), supports the

5    Judgment. Trustee cited *Gudelj* for two points:  the community property deed controls even if

6    Sarah did not understand the legal effect of community property ownership, and here, as in

7    *Gudelj,* there was no evidence of any agreement or understanding between wife and husband

8    sufficient to overcome the deed presumption. *Gudelj* supports Trustee on both points.

9        **D.**     **Any Separate Property Interest Was Transmuted By The Express
10          Declaration That The Property "Is Community Property."**

11         Sarah argues, and the Bankruptcy Court concluded, that the Cecconi Residential Trust did

12   not contain an express declaration sufficient to transmute separate property into community

13   property as required by the California Supreme Court's decision in *In Re Estate of MacDonald*,

14   51 Cal.3d 262 (1990).  Trustee contends that this conclusion is legal error for the reasons

15   discussed in Appellant's Brief at pp. 39-41.  The Residential Trust clearly contains an "express

16   declaration" within the meaning of Family Code section 852(a) that the Property is "community

17   property"; it expressly refers to Family Code Sections 1100 and 1102; and it provides that the

18   settlors' powers will be the same as those set forth in the Family Code. Exh. BD at 2, Art. I,

19   § 1.01.  The Residential Trust was created to hold *only* community property.  Sarah's separate

20   Living Trust was created to hold all of her separate property.  *See* Appellant's Brief at 15-16.

21         Sarah's testimony that it was her intent to retain full beneficial ownership is inadmissible

22   under *MacDonald* to prove a different intent than is reflected in the Residential Trust agreement.

23   If Sarah actually believed at the time she executed the agreement and grant deed that the Property

24   was her separate property despite how title was held, by expressly declaring that the Property is

25   "community property" in the Residential Trust and conveying it to the Trustees of the Residential

26   Trust, she transmuted any separate property interest to community property.  The transmutation

27   requirement of Family Code section 852(a) was met by Sarah's "express declaration."

28

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

**II.    SARAH'S CONVEYANCE OF HER COMMUNITY PROPERTY INTEREST TO HER LIVING TRUST ON THE ADVICE OF COUNSEL RATIFIED ITS COMMUNITY PROPERTY CHARACTER.**

Sarah does not respond to Trustee's argument that the transfer of her own community property interest to her Living Trust in 1994 on the advice of her estate planning attorney ratified community property ownership for the same reasons discussed in Section I.C. above.  If Sarah had no knowledge of how title was held because someone else directed how title was taken in 1985, her independent act in 1994 of transferring her community property interest to her Living Trust establishes her knowledge and ratification of its community property character.

Sarah's and Enzo's actions also establish that they considered the Property to be community property by complying with the Family Code in making the transfer.  Family Code § 1102(a) provides that  "both spouses . . . must join in executing any instrument by which that community real property or any interest therein is leased . . . or is sold, conveyed, or encumbered."    The fact that Sarah and Enzo carefully complied with the Family Code's community property requirements on transfers is clear and convincing evidence that they intended the Property to be community property notwithstanding their contrary testimony at trial.

**III.    SARAH'S PURCHASE MONEY FOR THE PROPERTY WAS REIMBURSED IN 1990, EXTINGUISHING ANY PRIOR RESULTING TRUST.**

It is undisputed that Sarah's purchase money ($610,000) for the unimproved Property as well as the cost of the improvements were reimbursed from the proceeds of the loan made by the Florida Bank to Sarah and Enzo as joint owners in 1990, and that, *at Sarah's direction, they both conveyed the Property* to the Florida Bank by a mortgage to secure the joint loan.  *See* Exhs. AQ and BX ¶ 31.  In *Gudelj*, 41 Cal. 2d at 210, the California Supreme Court held that an obligation secured by separate property will be treated as separate property and *an obligation secured by community property will be treated as community property.  See* Appellant's Brief at 42.  For the reasons discussed in Section I.B. above, the transfer of property at the direction of the beneficiary extinguishes any resulting trust.

Appellee's Brief argues that because her father's secretary, Carla Korb ("Ms. Korb"), submitted only Sarah's financial statement to the Florida Bank with the joint loan application, the

loan was made on Sarah's credit under *Gudelj*, and therefore the resulting trust was unaffected. However, Sarah's argument ignores that both Enzo and Sarah were obligated to repay the loan, and that the loan was secured by the Property as a joint asset of both Sarah and Enzo. *See* Appellant's Brief at 14 and 42-43. Thus, the loan was not made on Sarah's credit but was fully secured by the Property—a community property asset.[4] Sarah emphasizes that it is significant that the original purchase money loan in 1985 and a series of loans for improvements were secured solely by her separate property securities and that the "notes were all signed by Sarah and not Enzo." Appellee's Brief at 13:8-9. It follows *a fortiori* that it is equally significant that the 1990 loan repaying her 1985 purchase money and improvement loans was secured by their community property—not her separate property—and that she and Enzo, *not just Sarah*, were both responsible for repayment. Exh. AQ. If there was a resulting trust, it was extinguished as a matter of law when Sarah's purchase money was reimbursed and the Property was jointly conveyed to the Florida Bank to secure their joint obligation.

## IV.    THE BANKRUPTCY COURT'S FINDINGS DO NOT SUPPORT SARAH'S NEW LEGAL THEORY, AND THE BANKRUPTCY COURT'S DECISION THAT THE GIFT PRESUMPTION DOES NOT APPLY IS CLEAR ERROR.

Sarah's complaint in this adversary proceeding is entitled "Complaint to Establish Purchase Money Resulting Trust." CR 1. This case was tried based on the Complaint and no other legal theory was presented or argued in the Cecconis' Joint Post-Trial Brief or Joint Post Trial Reply Brief. *See* CR 174 and 177. Sarah now asserts that the Bankruptcy Court's Judgment can be affirmed based on a different theory—namely that the findings are sufficient to overcome the presumption of California Evidence Code section 662 that record title includes the beneficial interest. Appellee's Brief at 2 and 9-11. Sarah also argues that even if the Bankruptcy Court

---

[4]    The Bankruptcy Court relied on *Novak v. Novak*, 249 Cal. App. 2d 438 (1967) cited by Sarah to support the conclusion that Enzo's signature on the joint mortgage does not prevent the existence of a resulting trust. Decision at 68:27-28. *Novak* is inapposite. In that case, there was an oral agreement between the father, who paid for the property that gave rise to the resulting trust, and his son and daughter-in-law that they would take title to the property in their own names and obtain a mortgage, which the father would pay, because the father could not obtain financing himself. The son and his wife agreed that the father would pay the mortgage— which he did—and that when he paid it off, the son and his wife would convey the property to the father—which they refused to do. A resulting trust was declared based on their oral agreement. There is no oral agreement in this case.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    erred in failing to apply the gift presumption in this case, it was harmless error. *Id*. at 41. The

2    error is not harmless.

3        The Bankruptcy Court's erroneous finding of a resulting trust permeated the entire

4    Decision and was the sole basis on which the Bankruptcy Court held that the Residential Trust

5    did not terminate the resulting trust and did not transmute the Property to community property,

6    and that none of the many other actions taken at Sarah's direction altered the resulting trust.

7    Decision at 50:12-20.   If a resulting trust never arose, the presumption of Evidence Code

8    section 662 was not overcome because the Bankruptcy Court's findings rely exclusively on the

9    existence of a resulting trust that arose in 1985 and purportedly continues to this day.  Certainly

10   the Bankruptcy Court did not heed the admonition in *G.R. Holcomb Estate Co. v. Burke*, 4 Cal. 2d

11   289 (1935), that a court should be very wary of claims of a resulting trust made many years after

12   the fact, and the admonition in *In Re Freitas*, 16 F. Supp. 557, 560 (S.D. Cal. 1936), that even if

13   the testimony of the interested parties is "not contradicted by their own actions [which it is here],

14   it means very little."

15       There can be no doubt that the Bankruptcy Court put the burden of proof on Trustee to

16   prove that Sarah intended a gift while only superficially acknowledging that the burden was on

17   Sarah to prove that she did not intend a gift.  Had the Bankruptcy Court applied the gift

18   presumption, the evidence, especially the Residential Trust, precluded a finding that a gift was not

19   intended. A gift is presumed as a matter of law, and Sarah's present-day testimony that a gift was

20   not intended did not overcome this presumption.  As discussed below, Sarah's and Enzo's

21   testimony was contradicted by their own actions, by their clear earlier written admissions made

22   under oath and by all of the contemporaneous documentary evidence.  Based on all of the

23   evidence, Sarah did not establish a resulting trust and did not overcome the presumption of a gift

24   or the presumption of a beneficial interest established by Evidence Code section 662.

25   **V.    THE BANKRUPTCY COURT'S FINDINGS AND CONCLUSION THAT SARAH
         ESTABLISHED A RESULTING TRUST BY CLEAR AND CONVINCING**

26       **EVIDENCE IS CLEARLY ERRONEOUS.**

27       "A finding is 'clearly erroneous' when although there is evidence to support it, the

28   reviewing court on the entire evidence is left with the definite and firm conviction that a mistake

1   has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948);

2   *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). Where, as here, contemporaneous

3   documents, objective evidence, and Sarah's and Enzo's own earlier declarations contradict

4   Sarah's trial testimony and her testimony is "so internally inconsistent or implausible on its face

5   that a reasonable factfinder would not credit it . . . the court of appeals may well find clear error."

6   *Anderson*, 470 U.S. at 575.

7   Moreover, "the trial judge may [not] insulate his findings from review by denominating

8   them credibility determinations, for factors other than demeanor and inflection go into the

9   decision whether or not to believe a witness." *Id.* at 575. This Court, sitting as a court of appeal,

10   "may well find clear error" even in a finding purportedly based on "credibility determinations"

11   and it should do so on the basis of the record in this case.

12   **A.    The Bankruptcy Court's Findings And Conclusion That Sarah Did Not**
       **Intend To Give Enzo A Beneficial Interest Directly Contradicts**
13       **Contemporaneous Documents and Other Objective Evidence.**

14   Contrary to Sarah's disingenuous argument in her Appellee's Brief that Trustee "does not

15   really challenge" the Bankruptcy Court's "primary factual finding regarding Sarah's intent,"

16   Sarah acknowledges that "Sarah's intent is the central factual issue on this appeal" and devotes

17   11 pages to respond to Trustee's arguments concerning her intent. Appellee's Brief at 5:9-12;

18   9:6-25:15. Sarah further asserts that Trustee does not "actually address the great weight of

19   evidence supporting the crucial factual finding regarding Sarah's donative intent." *Id.*

20   at 29:19-30:2. Sarah wholly fails to identify any of that "great weight of evidence" other than

21   Sarah's own self-serving testimony at trial that she did not intend a gift.

22   Sarah characterizes the Bankruptcy Court's finding that "Enzo and Sarah did not own any

23   property together"—even if erroneous—as merely "tangential." *Id.* at 30:1-2. That finding is not

24   "tangential"; it is a clear indication of the scope of the Bankruptcy Court's errors because it is

25   what this entire case is about. That Sarah and Enzo "owned" the Property together is indisputable

26   based on the deed and the presumption of Evidence Code section 662. Exhs. J and K. *See also*

27   *Lowenthal*, 104 Cal. App. 2d at 183 (one is an owner "even if the ownership is only of the naked

28   legal estate or title").

Sᴴᴀʀᴛsɪs  Fʀɪᴇsᴇ ʟʟᴘ
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1       The Bankruptcy Court relied solely on Sarah's and Enzo's trial testimony of their

2   "lifestyle" and their "understanding" of the Residential Trust rather than what the express trust

3   actually says in concluding that "there was no evidence that she intended to make a gift" of an

4   interest in the Property to Enzo.  Decision at 65.  The finding that there was "no evidence" is

5   clearly erroneous in light of the contemporaneous documentary and other objective evidence,

6   including, but not limited to:  the 1984 and 1985 community property deeds (Exhs. H, J and K);

7   contemporaneous documents signed by Sarah and Enzo as owners of the property from 1985 and

8   thereafter concerning the development of the property (*e.g.*, Exhs. A, O, P, R, W, AE, AG and

9   AM); documents concerning the financing and refinancing of the improved Pebble Beach

10  Property (*e.g.*, Exhs. AP, AQ, AY, 15, 20, 27, 28, 29, 30, 39, 41, 45, 46, 73, 74 and 75); the

11  Residential Trust and Deed conveying the Property to the Trust (Exhs. BC and BD); the deed

12  conveying Sarah's separate community property interest to her Living Trust signed by both Sarah

13  and Enzo in 1994 (Exh. BA); property tax bills (Exhs. 87, DB); numerous homeowner's

14  insurance statements (Exhs. 88, BE, BF, BG, BH); and other documentary evidence such as

15  correspondence with the Cecconis' attorneys and others, letters supporting their application by

16  neighbors, public agency approvals and other documents (Exhs. R, S, T, U, V, W, X, Y, Z, AA,

17  AB, AE, AL, AO, 80 and 87).

18      At Sarah's urging, the Bankruptcy Court concluded that all of this evidence was based

19  solely on "record title" rather than "ownership" even though there was no evidence whatsoever to

20  support its findings or conclusion.  There was no evidence that vendors "merely assumed" that

21  the Cecconis owned the property based on "record title" (Decision at 17:27-21:18), and there was

22  no evidence that Mr. Sanders, Sarah's attorney for many years, based his understanding of the

23  ownership of the Property on "record title."  Decision at 61:9-14.  *See* Appellant's Brief at 14:25-

24  15:19 and 27:24-28:3.  Moreover, these assumptions do not explain why "record title" was in fact

25  taken by Sarah as community property or why "record title" does not accurately reflect beneficial

26  ownership as California law presumes.

27

28

**B.    The Bankruptcy Court's Finding That Sarah Paid For The Property And All Improvements With Her Separate Funds Is Contradicted By Contemporaneous Documentary And Other Objective Evidence That The Bankruptcy Court Erroneously Disregarded.**

The Bankruptcy Court's Decision repeatedly emphasizes that Sarah paid for the Property, paid for all improvements, managed the development by herself and paid all costs, including the mortgage.  Under California law, proof of payment is not sufficient to establish a resulting trust, but Sarah argued in her pre-trial and post-trial briefs that proof of payment was sufficient to shift the burden to Trustee to prove that she intended a gift.  CR 174 and 177.  Although the Bankruptcy Court superficially rejected her position, it is clear from the Decision that in order to find in her favor, the Bankruptcy Court erroneously put the burden of proof on Trustee.

Perhaps the Bankruptcy Court was reluctant to make Sarah responsible for the debts incurred by her husband because she paid for the Property with her separate funds, supported Enzo during his financial difficulties and has been his sole support since his London restaurant closed.  The law, however, does not favor Sarah in this case.  Sarah has voluntarily elected to take advantage of California law for 20 years to obtain the substantial benefits of community property, and it is appropriate and fair that she bear the legal consequences of community property ownership in accordance with California law.  Indeed, it is the very nature of community property that regardless of each spouse's contribution, all of the community property is subject to the separate debts of both spouses.  Cal. Fam. Code § 910.  It is unfair to Trustee for the Bankruptcy Court to disregard California law and the contemporaneous objective evidence and to credit self-serving testimony to reach a result that is clearly contrary to the evidence and applicable law.

**1.    The Bankruptcy Court Erred In Disregarding Enzo's Contradictory Testimony Regarding The $300,000 Loan And Other Funds Wired To Sarah's Bank Account.**

Trustee stipulated that Sarah paid the purchase price of the unimproved Property in 1985 by a loan secured by her separate property securities.  Trustee argued and submitted reliable, contemporaneous business records of The Royal Bank of Scotland ("Royal Bank"), one of Enzo's creditors and Sarah's own bank reconciliation records to prove that Enzo contributed substantial funds to Sarah—approximately $582,000 in all by 1990.  Enzo testified that the $300,000 he

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9    4111

1   wired in 1988 and 1989 to Sarah's bank account in Florida—the account from which all

2   acquisition and development costs of the Property were paid—consisted of monies he borrowed

3   from the Royal Bank. TT 575:19-576:2. The Royal Bank's business records reflect that Enzo's

4   stated purpose in requesting the $300,000 in 1988 was to assist with improvements to the

5   Property. Exhs. AC, AD, AH, AT, AW and AX.

6       Trustee also identified several contradictions between Enzo's trial testimony and his

7   earlier testimony and statements concerning the $300,000 Royal Bank loan proceeds which were

8   entirely disregarded by the Bankruptcy Court. Appellee's Brief does not respond to these

9   "contradictions," claiming that Trustee failed to support his argument by citing evidence in the

10  record. Appellee's Brief at 17:10-16. In fact, the contradictions by Enzo are cited in detail in

11  Trustee's Statement of the Case. *See* Appellant's Brief at 13-14 and 25-26. Briefly stated, at

12  Enzo's deposition two years before trial, Enzo could not recall ever mentioning the Property to

13  the Royal Bank branch manager. *See* Exh. BQ at 56-57. At trial, Enzo admitted that he had

14  discussed the Property with the branch manager and that the Royal Bank records were

15  substantially correct. Enzo nonetheless denied that he borrowed any funds for the Property while

16  at the same time testifying that he told the Royal Bank that the requested loan was to repay loans

17  from his wife to free up her collateral so she could obtain additional funding for improvements to

18  the Property. That testimony directly contradicted Enzo's previous declaration submitted in the

19  Monterey Action (as defined in Appellant's Brief at 4) that the money he borrowed personally

20  from the Royal Bank was used primarily "for living expenses" and that "all of that money was

21  expended in England or Italy." Exh. BL ¶¶ 7 and 10. *See also* Exh. BK ¶ 11 (Sarah Declaration).

22  Enzo's trial testimony is also directly contradicted by another declaration he submitted in this

23  case that the loans from Sarah (*i.e.*, the Florida Bank Notes which were only disclosed at the

24  commencement of trial) had been repaid from "the revenue of my business." Exh. BW ¶ 5. Gary

25  Vandeweghe, one of the witnesses called by Sarah, also testified that Enzo had told him that all of

26  his borrowings from the Royal Bank were spent in London or Paris. TT 2002:14-23.

27      Sarah also asserts that Trustee is wrong in arguing that Enzo admitted at trial that the

28  $300,000 he got from the Royal Bank and sent to her in 1988 and 1989 while construction was

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

underway "was indirectly used for improvements." Appellee's Brief at 18-19. Enzo's testimony was: "Now, the fact that it appears that I helped her to construct the house, *it is an indirect help*." TT 350:10-11 (emphasis added). Enzo also testified:

> The moment I paid those loans to the bank, my wife could take again the shares in her hands that she pledged against the loans and take another mortgage or another loan—she had so many loans at the time—because the house ended up by costing more than she expected.

TT at 350:20-25. In fact, Enzo never paid off any loans "to the bank"; rather, he wired the Royal Bank's $300,000 in three installments directly to *Sarah's personal bank account*. See Exhs. 62 at SC002179 and 63 at SC002196 and SC 002200. How Ms. Korb recorded the funds Enzo wired to Sarah does not alter the fact that the funds were used, directly or indirectly, for improvements to the Property. While Sarah claims she paid for everything, she clearly used $300,000 of the Royal Bank's money—not hers or Enzo's—to improve the Property.

### 2. The Contemporaneous Business Records Of The Royal Bank Contradict Enzo's Testimony.

The Bankruptcy Court disregarded contemporaneous business records of the Royal Bank reporting that Enzo's purpose for the $300,000 loan was "to enable him to effect payments in respect of the new California property." Exh. AD. Other Royal Bank business records also refer to withdrawals from Enzo's restaurant business to assist construction of the California residence. *See*, *e.g.*, Exhs. AC, AI and AW. Rather than respond, Sarah argues that Trustee has also waived this argument because Trustee failed to cite evidence in the record identifying any Royal Bank business records. *See* Appellee's Brief at 17. In fact, the Royal Bank business records are identified and discussed at length in Appellant's Brief in the Statement of the Case at pages 12-13. Trustee's Exhibits AC, AD, AH, AT and DE and other Royal Bank documents are identified and discussed throughout that section.

The Bankruptcy Court disregarded the Royal Bank records contradicting both Enzo's pretrial and trial testimony and treated the records as unreliable based on an unrelated claimed error in one document that "identified a London residence (the Charlwood property) as Sarah and Enzo's residence, when in fact that residence is where the chefs from Enzo's restaurant lived and

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9   4111

1  the Cecconis never lived there." Decision at 55. If the statement is an error, it is not material.

2  The point in the Royal Bank report was that the "Charlwood property" had appreciated in value

3  and that there was an intent to sell it, neither of which is disputed. Exh. AC at RBS 0271.

4        The Bankruptcy Court's only other reason for rejecting the accuracy of Royal Bank

5  business records is pure speculation. The Bankruptcy Court found:

6       If the Bank had believed that Enzo had a beneficial interest in the Property and the
        $300,000 was going to be used for the Property, it is highly likely that the Bank
7       would have taken, or at least demanded, a security interest in the Property.

8  Decision at 55-56. There is no evidence to support the Bankruptcy Court's speculation that it is

9  "highly likely" that a London bank would demand a security interest in property located in Pebble

10  Beach, California, especially when it had other security available to it in London. As Exhibits DE

11  and AC (at RBS 0267 and 0269) show, the terms of the loan provided for security by "a charge

12  initially to be taken over the Enzo Holdings by Shares and thereafter a Legal Charge over the new

13  London Property." Exh. DE.

14        The Bankruptcy Court's conclusion that the $300,000 borrowed by Enzo from the Royal

15  Bank repaid the loans made by the Florida Bank to Sarah and Enzo in 1981 and 1982 (Exhs. 163

16  and 165, the "Notes") is also erroneous because there is no evidence that Enzo ever directed any

17  payment to the Florida Bank or instructed Ms. Korb or anyone else to use the $300,000 (or other

18  funds totaling $282,000) that he wired to her account to pay off any loan or to pay interest on any

19  loan. The Bankruptcy Court erred by disregarding Enzo's contradictory testimony and the

20  contemporaneous Royal Bank business records that show Enzo's substantial contributions to the

21  improvements, especially since the existence of the Notes was not disclosed at deposition, they

22  were not produced until trial and Trustee objected to their admission for lack of any prior notice

23  of their existence or relationship to Enzo's substantial deposits in Sarah's bank account. The

24  Bankruptcy Court nonetheless simply excused Sarah's failure to produce these documents earlier.

25  *See* Decision at 36-38. Trustee's objections to the Notes being received in evidence should have

26  been sustained.[5]

27  _____

    [5]    Appellee's Brief also claims this error was waived because it was addressed only
28  in a footnote. Trustee's objections are discussed in Appellant's Brief at 7-9 and 25-26.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1

**C.     The Bankruptcy Court's Repetitive References To Enzo's And Sarah's Testimony As "Credible" And As "Clear And Convincing" Do Not Insulate These Findings From Review On Appeal.**

2

3       The Bankruptcy Court attempts to insulate its Decision from appeal by repeatedly

4  describing Sarah's and Enzo's testimony as "credible," and "clear and convincing."  Indeed, the

5  Decision characterizes testimony that is completely inconsistent with the documentary evidence

6  and/or prior testimony as "credible" and frequently uses the phrase "clear and convincing" with

7  respect to that "credible" testimony.  *See, e.g.*, Decision at 13:2-5; 37:21-22; 38:8-9; 50:16-19;

8  51:16-26; 55:3-56:4; 57:3-11; 62:3-63:13; 64:22; 65:23-25.

9       Although the Bankruptcy Court found that Sarah failed to pay any attention to her affairs,

10  failed to read documents she signed, and relied on others to make decisions for her—especially

11  her father prior to 1997—the Bankruptcy Court failed to apply fundamental principles of

12  California law that a party is deemed to have read the documents that she or he signs and to have

13  understood their contents, particularly when they are signed with the advice of, and in reliance on,

14  legal counsel.  *See* Appellant's Brief at 38-39.

15       Sarah's long history of tax planning to avoid or minimize her taxes was established by

16  both Ms. Korb's and Sarah's testimony as well as the documentary evidence.  To avoid capital

17  gains taxes, Sarah regularly obtained personal loans rather than sell her stocks and then took a

18  personal interest deduction to lower her taxes.  TT 413:17-414:15; 1350:2-12; 879:5-17.  Sarah

19  later consolidated her loans by a mortgage on the Property to get a tax deduction for interest.

20  Exh. BX ¶ 30 and TT 799:6-8.  Sarah carefully limits her stays in Pebble Beach to avoid paying

21  tax as a California resident while enjoying the benefit of having an estate in California.

22  TT 1737:8-1738:6.  Sarah took title—first to the Townhouse (Exh. H)  and then to the Pebble

23  Beach Property (Exhs. J and K)—as community property to enjoy the substantial estate and tax

24  benefits of community property ownership, and she created the Residential Trust to obtain

25  additional benefits.  *See* Exh. BD.

26       Enzo has had a similar history of tax consciousness and avoidance.  He had his restaurant

27  business pay for his London home—the Mews House—and pay his living and personal expenses

28  to avoid income and property taxes.  TT 148:11-149:8; 150:14-18 and 579:17-580:4.  The English

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

tax authorities eventually challenged his practice and he suffered significant financial consequences when he had to pay back taxes as well as his own personal expenses at a time when his restaurant was in financial difficulty.  TT 330:20-332:14 and 333:20-334:20; Decision at 21-22.  Enzo has never filed a tax return in the United States and has avoided anything that would require him to do so.  *See* TT 1790:8-16 and Exh. BL ¶¶ 3-5.

The use of California community property law to serve their estate and tax purposes is a deliberate choice the Cecconis made and is entirely consistent with the way they have conducted their affairs.  Since Enzo's business failed, he has had no independent source of income, and the clear purpose of the Residential Trust was to assure that Enzo could minimize taxes upon the sale of the Property if he needed to sell it in order to meet his expenses if Sarah predeceased him.

Sarah's wealth and privileged life have made it possible for her to have the best available estate planning and tax advice, and she has always taken advantage of it.  Consideration of the Bankruptcy Court's Decision in Sarah's favor in light of the entire evidence—crediting testimony that is contrary to the documents she signed, contrary to her stated intent and contrary to the written, undisputed contemporaneous evidence—shows that a mistake has been committed.  This Court should disregard the "credibility" label given by the Bankruptcy Court to Sarah's and Enzo's testimony and should find that Sarah's inability to explain why she took the steps she did—plus the contradictions, internal inconsistencies and other objective evidence—establish that the Decision and Judgment entered are clearly in error.  *Anderson*, 470 U.S. at 573.

## VI.   THE BANKRUPTCY COURT'S DECISION NOT TO AWARD TERMINATING OR ADVERSE INFERENCE SANCTIONS IS CLEARLY ERRONEOUS.

Sarah argues that Trustee's appeal of sanctions is premature, that Sarah has established that she acted in good faith and that she did not engage in willful misconduct.  Trustee disagrees.

### A.   Trustee's Appeal of The Decision and Judgment Denying Terminating and Adverse Inference Sanctions Is Properly Before This Court.

Sarah argues that Trustee's appeal of the Bankruptcy Court's denial of terminating and adverse inference sanctions is premature, yet cites no authority to support her argument.  Appellee's Brief at 3:14-17, and 33:17-26.  The Bankruptcy Court's Decision and corresponding

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

1    Judgment constituted final rulings on Trustee's request for terminating or adverse inference

2    sanctions, and the denial of those sanctions was immediately appealable.  Fed. R. Bankr. P. 8001;

3    28 U.S.C. § 158(a)(1).  *See also In re Frontier Properties, Inc.*, 979 F.2d 1358, 1363 (9th Cir.

4    1992); *In re Moody*, 817 F.2d 365, 368 (5th Cir. 1987).  The Bankruptcy Court's retention of

5    limited jurisdiction on the narrow administrative issue of the amount of attorneys' fees Trustee

6    incurred for specific tasks itemized in the Decision does not make this appeal premature.  *See In*

7    *re Sierra Fin. Svcs., Inc.*, 290 B.R. 718, 731-32 and n.9 (9th Cir. B.A.P. 2002).  In any event, the

8    issue is now moot.  The Bankruptcy Court issued its Memorandum Decision Re Monetary

9    Sanctions on October 16, 2007, and will enter a final order shortly.

10

11    **B.    The Bankruptcy Court's Findings Regarding Sarah's Document Production Are Clearly Erroneous.**

12    Appellee's Brief argues that the record shows that she and her counsel attempted to

13    respond to Trustee's document requests in *good faith*.  Appellee's Brief at 34.  This claim is

14    belied by her conduct, her testimony and the testimony of her attorney, Elaine Seid ("Ms. Seid"),

15    on whom she principally relies.  It is undisputed that Ms. Seid conducted no document review at

16    all and had no personal knowledge of the scope of any document search or review conducted by

17    Sarah or Ms. Korb.  TT 2260:16-19; 2263:14-2264:14; and 2310:8-11.

18    Appellee's Brief states that Ms. Seid testified "that Ms. Korb and Sarah reviewed all of

19    Sarah's financial and business files to locate documents that would be responsive to Spicer's First

20    Request for Production."  Appellee's Brief at 35.  The evidence clearly does not support this

21    statement.  Sarah testified that she never saw Trustee's request for production of documents.

22    TT 1668:13-1669:3 and 1914:18-1915:3.  Sarah also confirmed that she had not looked for

23    documents requested in Trustee's counsel's supplemental request.  Exh. DM; TT 1918:3-16.

24    Sarah further testified that she had not reviewed all of the documents in her possession.

25    TT 1844:16-25.  Ms. Seid testified that she had no personal knowledge of whether all of Sarah's

26    files had been reviewed by Sarah or Ms. Korb and that she never met with Sarah to explain the

27    document request to her.  TT 2263:14-2264:14; 2310:8-11; 2259:15-21.

28    Sarah praises Ms. Korb's knowledge and familiarity with the documents she sent to Sarah

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

1    after Sarah's father's death as sufficient to establish a good faith effort to produce documents.

2    Appellee's Brief at 34:23-35:14.  Ms. Korb testified, however, that she reviewed Sarah's files

3    months before Trustee served his document request and obviously could not have been looking

4    for documents responsive to a document request that had not yet been served.  TT 867:21-868:2

5    and Exh. DG.  *See also* TT 2259:15-2260:4.  Sarah testified she never discussed with Ms. Korb

6    what documents should be produced.  TT 1919:25-1920:2.  Sarah's claim that she and her counsel

7    relied on Ms. Korb to conduct a complete review and thereby satisfied their discovery obligations

8    under the Federal Rules is baseless since Ms. Korb could not possibly have conducted a proper

9    review if she never saw a copy of Trustee's document request,[6] and *there was no testimony by*

10   *Ms. Korb that she was ever shown or given Trustee's document request or that Ms. Seid gave her*

11   *any instructions concerning Trustee's request.*  Sarah emphasizes that "Sarah and Ms. Korb

12   review[ed] thousands of pages of documents and produced 2,000 pages of documents "including

13   copying and Bates stamping within thirty days of receiving Spicer's request."  Appellee's Brief at

14   36:14-18.  It could not be more clear that Sarah simply produced only the documents Ms. Korb

15   had previously gathered *to support Sarah's case* that she paid for the Property and improvements.

16   *See* TT 2259:15-2260:4.

17       Sarah did not search for documents in Venice, where she has had her principal residence

18   for more than 20 years, and Ms. Seid gave her no instruction to do so.    TT 2262:5-20.

19   Significantly, Sarah and her counsel failed to conduct any search for responsive documents

20   during trial—which was in session for only 15 of 71 days—even after the Bankruptcy Court

21   criticized her counsel on the record during trial for failing to review documents and supervise

22   document production and even though Trustee requested that counsel certify that all documents

23   had been produced and sought terminating and adverse inference sanctions if certification was not

24   provided.  TT 1669:17-23 and 1670:7-18 and Exh. DQ.

25       Sarah offers no explanation for producing numerous documents for the first time during

26   _____

27       [6]    Sarah cites Ms. Seid's testimony at TT 2144:4-11 as support for her claim that
     Ms. Seid provided Ms. Korb with a copy of the follow-up request.  However, Ms. Seid actually
28   testified that she only gave a copy of the letter to Sarah.  She did not testify that she gave a copy
     to Ms. Korb; nor did she testify that she spoke to Ms. Korb about it.

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

1    trial to help her case, as Trustee detailed in Appellant's Brief at pages 44 to 46.  The undisputed

2    fact is that no search was ever conducted by anyone before trial to locate documents responsive to

3    Trustee's document requests, and no search was conducted after the issue was repeatedly raised

4    during trial.  Appellant's Brief at 44.

5         Appellee's Brief fails to give any reason why there was no response to Trustee's express

6    written request for assurance that all responsive documents had been produced and that no other

7    documents had been altered following Trustee's discovery of the altered documents just prior to

8    trial.  The reason is clear:  Ms. Seid testified that *she had not conducted any document review*

9    *herself and therefore could not certify anything.*    TT 2260:16-19;  2283:18-22 and 2292:8-

10   2293:12.  The Bankruptcy Court's conclusion that Sarah's conduct was not willful or inconsistent

11   with the orderly administration of justice is clearly erroneous based on all of the evidence and is

12   inconsistent with obligations imposed by the Bankruptcy and Federal Rules.

13       **C.    The Bankruptcy Court Clearly Erred In Finding That Sarah's Application Of**
           **Liquid White-Out To Various Documents Did Not Justify Terminating Or**
14         **Adverse Inference Sanctions.**

15       Sarah has admitted she deliberately and willfully altered evidence.  *See* TT 1563:2-8;

16   1921:21-1922:2; 1921-1924 and 2082:18-2083:9 and Exh. DW (summary account of whited-out

17   information).    Because the white-out obliterated the original text, neither Trustee nor the

18   Bankruptcy Court had any way to determine what evidence was lost.  Sarah Cecconi's willful and

19   deliberate spoliation prevented this evidence from being available.  Sarah testified at trial (after

20   Trustee discovered the whiteouts) that she deleted her husband's name from documents because

21   she was mad at him and the Royal Bank (TT 1562:13-1563:8), as if that excused her conduct or

22   mitigated the consequences.    Whatever her reasons, she took those actions deliberately.

23   Moreover, she testified she whited-out Enzo's name because the insurance was for "her house."

24   TT 1930:6-24 and Exh. DP.    Appellee's Brief seeks to justify this unacceptable and willful

25   misconduct because Ms. Seid told her it was acceptable to delete private information.  Appellee's

26   Brief at 38:3-18.  The fact that Sarah's own counsel told her that deleting personal information

27   was fine does not protect her from the consequences of her actions.  *See Link v. Wabash R.R. Co.,*

28

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

1   370 U.S. 626, 633-34 (1962).[7]  The fact that Sarah got tired of whiting out documents and failed

2   to complete the job does not mean it wasn't willful, deliberate and deceitful.

3       Sarah argues that the Bankruptcy Court correctly held that the white-outs she made did

4   not prevent the Court (or Trustee) from determining what text was deleted in any documents and

5   suggests that only certain personal information was removed.  Appellee's Brief at 37.  This is

6   flatly wrong.  Neither the Bankruptcy Court nor Trustee had any means to determine what was

7   deleted in at least the following exhibits:  Exh. 102 (at 58, 63 and 64); Exh. 103 (at 59-61);

8   Exh. 104 (at 38, 49 and 50); Exh. 106 (at 67, 69 and 95); Exh. 107 (at 59); Exh. 108 (at 90, 115,

9   116, 119 and 123); Exh. 109 (at 92 and 103); and Exh. 110 (at 88).  There is no testimony that the

10  deletions were only personal information because that cannot be ascertained, as Ms. Seid

11  admitted.  TT 2293:3-6 and 2302:11-17.  Sarah could not explain why she had eliminated text

12  from these documents.  TT 2084:21-2085:3 and 2096:7-13.[8]

13      Finally, while vast numbers of white-outs were identified by Trustee and acknowledged

14  by Sarah, counsel for Sarah would not certify that all white-outs or other alterations had been

15  identified.  See Exh. DQ; TT 2300:24-2301:7 and 2306:16-2307:11.  Indeed, Ms. Seid testified

16  that it was possible Sarah had made other redactions that had not been identified.  TT 2312:13-

17  2313:2.  The Bankruptcy Court's findings that Sarah complied with her discovery obligations (or

18  that there was "no evidence" that she did not) and that Trustee and the Bankruptcy Court could

19  determine what was deleted by Sarah are clearly erroneous.  Its conclusion that no sanctions other

20  than monetary sanctions (limited to specific additional costs incurred by Trustee) were warranted

21  is also clearly erroneous.  Sarah's spoliation of evidence, coupled with her failure to perform a

22  _____

23      [7]    Sarah misleadingly assets that her counsel, Ms. Seid, "negotiated a protective
    order" that allowed Sarah to redact her social security number and driver's license number from
24  documents.  Appellee's Brief at 38.  The stipulated protective order applied only to documents
    being produced by Wells Fargo Bank, and it provided that *Wells Fargo Bank* would make any
25  appropriate redactions.  CR 36.  The stipulated protective order was entered long *after* Sarah had
    produced the documents that were later discovered to contain hundreds of white-outs.  Exhs. DK,
26  DL and DW.

27      [8]    Notably, Sarah did not white-out the memorandum line on all checks she
    produced—she was selective.  *See, e.g.*, Exh. 109 at 58, 59 and 60.  Her selectivity strongly
28  suggests that Sarah deliberately whited-out only some memorandum lines because those
    contained information she considered potentially harmful to her or helpful to Trustee.

1   reasonable search for documents, deprived Trustee of a fair trial.  Terminating sanctions or, at the

2   very least, adverse inference sanctions, should have been imposed.

3                                            **CONCLUSION**

4        Sarah Cecconi, a wealthy person with sophisticated estate and tax counsel, acquired the

5   Pebble Beach Property and treated it as community property for 20 years based counsel's advice.

6   She also created two trusts—one to hold her separate property and one to hold the community

7   property of her and her husband.  She admits that she sought the tax benefits of community

8   property, borrowed money jointly with her husband by pledging the Property as security and only

9   denied its community property character after one of her husband's creditors, the Royal Bank,

10  "came after" her.  Sarah now seeks to avoid the burden of community property ownership by the

11  convenient excuse that she didn't read the documents she signed because "she didn't have to" and

12  because they "didn't mean anything" to her anyway.

13       But the tax benefits did mean something to her, and her intent to obtain those tax benefits

14  by community property ownership is clear and undisputed.  Her professed lack of knowledge that

15  community property carries with it liability for the debts of both the husband and wife is

16  irrelevant under California law and is not credible.  Her effort to disavow her deliberate actions

17  taken with the advice of counsel are as binding on her—wealthy and privileged as she is—as they

18  would be binding on anyone less wealthy and less privileged.  The Judgment of the Bankruptcy

19  Court is clearly erroneous, contrary to California law and should be reversed and judgment

20  entered in favor of Trustee.

21  DATED:  November 5, 2007           Respectfully submitted,
                                       SHARTSIS FRIESE LLP
22

23

24                                     By:    _/s/ Mary Jo Shartsis_
                                              MARY JO SHARTSIS
25                                     Attorneys for Appellant
                                       A.C. SPICER, TRUSTEE IN BANKRUPTCY
26  6043\002\MSHARTSIS\1464284.5

27

28

Shartsis Friese llp
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111